Bryant *et al. vs.* Booze.

---

COLLATINUS W. A. BRYANT *et al.*, plaintiffs in error, *vs* THOMAS H. BOOZE, defendant in error.

1. If, after notice that another has made a contract for the purchase of land, a third person cuts in, buys it, and takes a conveyance, such person stands in the place of his vendor, and a court of equity, if it would decree a specific performance of the contract against the latter, will render a like decree against the former.

2. The notice need not be actual nor amount to full knowledge. Information, from whatever source derived, which would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry, will be sufficient.

3. Notice to an agent, received while clothed with authority to promote, and while engaged in promoting, the intended purchase, will be notice to the principal, even where the principal comes forward before the agent has concluded the negotiations, and completes the purchase in person, the agent not participating in the final stages of the transaction, but only making the opening which the principal follows up.

4. The declarations of a tenant in common derogatory to the common title after it has become vested, are not evidence against the co-tenant. Therefore the admission of one that a certain person was the agent of both in promoting the purchase, will affect that one only.

5. A proposition to sell, contained in a letter sent by mail to the writer's agent or friend, with request to communicate it, may, after communication to the person for whom it was intended, be accepted by a written reply from the latter addressed directly to the maker of the proposition; and, in such case, sending the reply to the post-office through the same agent or friend, first permitting him to read it, and telling him orally that the proposition is accepted, will not prevent the contract from being one made by letter; and

the contract will be closed, not from the time of leaving the reply to be carried to the post-office, but from the time of its delivery into the post-office.

6. It is not unlawful to hand a business letter to another on Sunday to be posted on Monday; and, therefore, a letter written on Saturday, left by the writer on Sunday, with request to carry it to the post-office on Monday, may be the medium of accepting a prior proposition from the person to whom it is addressed, and thus closing a lawful contract, dating from Monday, the time when the letter was posted in pursuance of the Sunday request.

7. That a memorandum by counsel on a document in evidence was not erased according to the counsel's promise in open court, but went out with the jury, is not cause for a new trial where the evidence is ample to support the verdict on all the material elements of the issue. In this case, the irregularity was harmless.

Vendor and purchaser. Notice. Principal and agent. Tenants in common. Evidence. Contracts. Sunday. Jury. Practice in the Superior Court. New trial. Before Judge UNDERWOOD. Floyd Superior Court. January Term, 1875.

It is only necessary to a clear understanding of this case to report the testimony, introduced upon the trial, tending to show notice to Bryant and Briscoe, prior to their purchase, of the acceptance by Booze of the proposition made to him, in reference to the sale of the land, and the motion for a new trial.

Willis Bobo testified, in brief, as follows: Roberts had been corresponding with him for some time about the land in controversy. First priced it at $700.00, and asked him to see if he could find a purchaser. Saw T. F. E. Bryant, brother of Collatinus W. A. Bryant, and Booze, and told them what Roberts had written. Bryant read the letter, and said that let him out. Witness wrote to Roberts, and sent him Bryant's and Booze's bids. On Saturday, June 28th, 1873, witness went to town, (Rome,) and received the original of the letter copied in the bill.

The only material portion of this letter was as follows: "So please say to Mr. Booze, if he will pay to me $550.00 at the convention at Athens, in August next, and pay the taxes

due on the lot, I will make him a title as good as can be made to any land in Georgia."

Witness went by Booze's house that evening to give him the letter. He was not at home, but met him at the mountain, about one mile from his house; told him he had a letter from Roberts, and threw it into his carriage. On the next day, Sunday, Booze came to witness' house, bringing an open letter, in response to that of Roberts, accepting the proposition therein contained; said he was going to town on Monday to mail the letter. Witness replied that he was going to Rome on the next day, Monday, and would mail the letter for him. Booze replied that that would save him the trip; witness took the letter and mailed it as promised. As he returned from Rome in the evening met T. F. E. Bryant, at Parish's shop, and said to him that he reckoned he had lost the land, as Booze had purchased it. Bryant asked if Booze had bought it from witness or from Roberts; told him that he had bought it from Roberts. Bryant asked how much Booze was to pay for it; replied about $600 00. Bryant then remarked that he would have it if he had to pay $750 00 for it; that $200 00 would buy most men, and he intended to have the land. Witness told him not to do that, because it would make Roberts dissatisfied with him, and he was the friend of all the parties. He, (Bryant,) then said that he would have nothing more to do with it, and if others wanted to buy it they could do so for themselves. On the evening of the next day, Tuesday, witness met Bryant in Rome, and asked him if he had sent the proposed letter to Roberts. He said that he had not. Told him he must not do so, but if he did, he, witness, would expose him; told him that he, witness, did not want him, or any one of his party, to interfere with the trade. Saw T. F. E. Bryant, Collatinus W. A. Bryant and Briscoe together in town on that day; the conduct of Tod (T. F. E.) Bryant had hurt his feelings, and on Monday night witness wrote a letter to Mr. Roberts explaining the whole matter. On Tuesday, at the interview above referred to, he offered to read the letter to Tod Bryant, when he said he did not want to hear it.

Witness then destroyed it. He told Bryant what was in it; that he had written a severe letter, giving Roberts an account of the whole transaction, and stating that Booze had accepted his offer. It seems that witness was acting for all parties; went to the convention at Athens, in August, 1873, to tender Roberts the money for Booze. He was not at Athens, so witness went on to his house, in Hart county; offered him the $550 00, but he refused to receive it. Roberts then had the letter from Booze accepting the offer made him in June, 1873. Never had any conversation with C. W. A. Bryant or Briscoe, and if they had any notice of Booze's purchase, witness does not know it; does not know that Tod Bryant was acting for them, or that he gave them notice of the purchase by Booze. C. W. A. Bryant and Briscoe live on the same lot of land. Tod Bryant lives about two miles from them.

The only material portion of the testimony of the complainant was as follows:

C. W. A. Bryant, when he came over to survey the land after it was purchased by him and Briscoe, told complainant that he must not fall out with Tod, but with him and Briscoe, because the former had been acting for them all the time. Complainant sent Bobo to Athens to tender the $550 00 to Roberts. He also offered to pay to Trout, tax collector, the taxes. Thinks this was before Briscoe left Rome on the 1st or 2d of July. On the day Briscoe left Rome, Tod Bryant asked complainant if he would take $200 00 for his bargain.

The balance of the testimony of this witness was substantially as that of Bobo.

C. W. A. Bryant testified that he had no notice of the purchase by Booze until long after he and Briscoe had bought. That he had heard a rumor that Booze was trying to buy the land.

D. T. Briscoe testified, in brief, as follows: Left Rome on July 1st, 1873, and went to Hartwell, Hart county, to buy the land in controversy, for himself and C. W. A. Bryant. Bought it from Roberts on July 4th, 1873, and took a deed to the same. Never, at any time before he left Rome, had any

notice of Booze's purchase, nor of the letter received by Bobo from Roberts, nor of Booze's reply accepting the offer therein made. Roberts lived two or three miles from Hartwell, and when he proposed to buy the land, told him that he wished to purchase it for witness and C. W. A. Bryant. Roberts said that Booze was trying to buy it, but did not state that he had received a letter from him. Roberts and witness went to town together. Separated when they arrived at Hartwell. Does not know whether Roberts went to the post-offie or not. Witness had bought the land before they went to town. Roberts said that he had recently offered to sell the land, through Bobo, to some one at a certain and definite price, but he did not say to whom. Witness was not the one referred to.

The jury found for the complainant. The defendants moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict was contrary to law, equity, justice and evidence.

2d. Because the court erred in charging the jury as follows: " If you find from the evidence that the negotiations between the complainant and Roberts, if Roberts was authorized to sell the land, had reached the point that a proposition to sell by Roberts to Booze on certain terms, was made by letter, and accepted by Booze in writing, and the letter making the proposition to sell, was forwarded or sent by mail and the letter of Booze accepting the proposition was sent by mail, the bargain was closed when the letter accepting the proposition was put in the mail, and if at the time of procuring the deed, the defendants had notice of the rights of Booze, they will stand in the same place and condition of Roberts or those Roberts represented, and if the complainant offered to perform his part of the contract by paying the $550 00 and the taxes at the time and place mentioned in the agreement, or the letters of the parties, then the complainant is entitled to relief unless there is some legal or equitable reason why it should not be granted. In relation to contracts made on Sunday, if the contract is not a matter of necessity, benevolence or charity, and is of worldly matters purely, such as buying and selling land, the

contract is void.  If you find from the evidence that the proposition from Roberts to Booze was handed to Booze on Saturday evening and answered and accepted that evening, and the letter was mailed on Monday.   The handing the letter to Bobo on Sunday to mail on Monday, would not make the contract a contract made on Sunday and vitiate the contract.   If the letter was written on Sunday and mailed on Sunday, the contract would be void.   If the letter was written on Sunday and delivered in the mail by Bobo, his agent for the purpose of taking the letter to the mail, on Monday, it would not be a Sunday contract."

3d.  Because the court refused to give the following charge : "If T. F. E. Bryant did not buy the land for Briscoe and Clat Bryant, the rule of notice to agent being notice to principal, does not apply.   If Briscoe bought the land himself, and not through T. F. E. Bryant, as agent, notice to T. F. E. Bryant would not be notice to him, unless the evidence shows that T. F. E. Bryant had communicated to him (Briscoe) the notice he had in regard to Booze having bought the land before he (Briscoe) bought it."

4th.  Because the court erred in charging as follows: "If notice was given to T. F. E. Bryant while he was agent, if it is proved he was agent of defendants, it would be notice to defendants even if Bryant had ceased to be their agent before they purchased, whether Bryant had communicated it to defendants or not.   If they purchased for themselves they are chargeable with notice to Bryant, if he was their agent, if he received notice while he was agent.   Any notice to Bryant after he ceased to be agent would not affect defendants.   Notice to the agent is notice to the principal."

5th.  Because the court erred in charging the jury as follows: "Any notice is sufficient, or, in other words amounts to constructive notice, which would excite apprehensions in ordinary minds, and prompt inquiry into the actual condition of things; and information for such purpose may be communicated by a person whether he had personal knowledge of the fact or be specially authorized to speak or not, provided

it be given by such a man and in such terms as would induce a person of ordinary prudence to inquire into the matter."

6th. Because, when the letter from F. S. Roberts to Willis Bobo, bearing date June 14th, 1873, was offered and read in evidence on the trial of said case, defendants' counsel objected to the memorandum, "mailed 19th, received Saturday, 28th, answered Monday, June 30th," at the bottom of the first page of said letter, being read in evidence, the same being in the hand-writing of Joel Branham, jr., one of complainant's counsel. Said Joel Branham, jr., stated that said memorandum was in his hand-writing, and made by him some time after said letter was received by said complainant, and that he would erase the same from said letter before the jury should retire to consider of their verdict. Said defendants' counsel relied on this statement, but he failed or omitted to erase said memorandum from said letter, and allowed the same to remain on the said letter that was taken out by the said jury as evidence in said case, as a part thereof. Relying on said statement of said Joel Branham, jr., to erase said memorandum, defendants' counsel paid no furthr attention to the original letter, and used and referred to the copy of said letter set out in the bill in the consideration and argument of said case.

In support of this ground, an affidavit was filed, showing that defendants' counsel did not know that the memorandum went out with the jury unerased, and that they relied on complainant's counsel to erase the same.

The motion was overruled, and defendants excepted.

DABNEY & FOUCHE, for plaintiff in error.

SMITH & BRANHAM, for defendant.

BLECKLEY, Judge.

Booze filed a bill against Bryant and Briscoe to compel them to convey to him a certain tract of land. He based his right on a contract made by letter, which he alleged he had

Bryant *et al. vs.* Booze.

concluded for the purchase of the land, and of which, he alleged, they had notice when they purchased and took a conveyance from the same party. Notice was denied, and, more-. over his contract was assailed as invalid because made on Sunday. The jury found for him, and the court decreed the conveyance prayed for, on condition of his paying into the clerk's office the amount fixed by his contract as purchase money. The record shows that this payment was made within the time prescribed by the decree.

1. Upon the charges in the bill, there can be no doubt that the complainant was within a well known principle of equity jurisprudence when he invoked the interposition of that court to prevent his adversaries from holding on to a title which they acquired with notice of his prior purchase. They, on such a state of facts, would occupy the place of their vendor, and would have to respond to a demand for specific performance, for him or with him. For this position early and late authorities are both abundant: Fry on Sp. Per., 57, 58; 1 Story's Eq., section 396.

2. And the notice, to charge them, need not be actual nor amount to full knowledge. Information, from whatever source derived, which would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry, would be sufficient. Nor need the notice be proved by direct and positive evidence; it may be shown by facts and circumstances. And the jury are at liberty to believe the notice existed, notwithstanding it may be positively denied by the testimony of the interested parties. In this case they do deny it; but their denial does not negative the facts that environed them; and from these facts the jury could have formed a very rational opinion that they either did know, or ought to have known, that Booze had outstripped them in making a contract of purchase. There was enough in sight to put them on inquiry. If they failed to inquire, they are in the same situation as if they had received the notice, which they doubtless would have received if they had ventured to ask a question. The means of information were

at hand. The law would hold them only to resort to such sources of information as were reasonably accessible ; it would not impose on them extreme diligence, but ordinary diligence; and not even that, until they had first seen or heard something to awaken apprehension. Perhaps rumor, apparently well founded, might be enough for that, under some peculiar circumstances, though it is not, of itself, notice or a badge of fraud : 8 *Georgia*, 258. In this case, however, the jury might well have found there was more than rumor to prompt inquiry. There was a very suspicious activity immediately after Bobo communicated to Bryant's brother the fact of Booze's purchase : 1 Story's Eq., sections 399, 400*a*.

3. Notice to an agent is notice to the principal : Code, sec. 2200. The court's charge on this subject was sufficiently accurate for the purposes of the present case. The evidence does not point to any notice that reached the alleged agent before his agency was created or after it ceased. If he was agent at all, he was most probably such when he received the information which is relied upon as notice to him. There is nothing to show the discontinuance of his agency, if indeed he was agent, except that one of the principals, at last, after the agent became aware of Booze's contract, stepped in and made the purchase in person. It is contended that, on account of this last mentioned fact, the doctrine of notice to agents does not apply to the case at all. But it will be remembered that this alleged agent, either for himself as principal, or for some one else, had, for some time, been opening the way for a purchase of the land. If Bryant and Briscoe were his principals, (and that was a question for the jury,) they only followed up the opening which he had made or formed. The evidence shows that he was in conference with them shortly before the purchase was effected, and there is nothing to indicate that they had ever, up to that last interview, taken any part, in person, in the efforts at negotiation. He was the brother of one of them, and the circumstances make it altogether probable, to say nothing of the express admission of the fact by the latter, that he represented them.

4. In regard to this admission, we think it clear that being made as it was, after their purchase and after their title vested, it proves no agency as against Briscoe. It is evidence only as against Bryant, the party who made it. But the evidence of agency which the facts and circumstances themselves afford, affect both alike, and they are pretty strong. It would not do any violence to probability to consider agency established independently of the admission. Besides, the exigencies of the case do not absolutely require that there should have been an agency. Only for the purpose of charging the principals with notice through the agent, is the agency at all material, and there is enough evidence of notice otherwise to uphold the verdict.

5. The owners of the land had an attorney in fact residing in Hart county, one Roberts. Booze resided in Floyd, the county in which the land lies. In the latter county resided also a mutual friend of the parties by the name of Bobo. Roberts had been corresponding with Bobo, and by that means knew that Booze wanted to purchase. He finally wrote to Bobo requesting him to say to Booze that he could have the land for $550 00 and taxes of the current year. This letter was received and handed to Booze on Saturday. That night Booze wrote an answer addressed to Roberts, accepting the proposition. On the next day, being Sunday, he carried this letter to the house of Bobo, told him of his acceptance, and requested him to read the letter. Bobo read it. It is contended that at this point the contract was closed, and consequently, that it was a Sunday contract. Several answers may be made to this suggestion. Roberts was, himself, only an attorney in fact, and his power, as copied in the record, did not confer express authority to constitute sub-attorneys or agents under him. His letter to Bobo did not instruct him to sell the land to Booze, but only to communicate a proposition. Booze did not, if he could have done so, elect to deal with Bobo alone, but addressed his written acceptance to Roberts, and adopted the mail, the medium by which the letter of Roberts to Bobo had been received, as the means of final transmission; he re-

quested Bobo to carry the letter on the next day to Rome, (whither Bobo was going on his own business) and put it in the post-office. This Bobo promised to do, and he did so accordingly. There was no arrangement that Bobo should write informing Roberts of Booze's acceptance, or that Bobo was to take any further part in the transaction, except to convey Booze's letter to the post-office, and this he undertook to do at Booze's request, and not under any instructions from Roberts. It is plain that both of the actors in the Sunday interview treated the letter as the sole medium of acceptance, and as an acceptance designed to be direct, as between Booze and Roberts. We think it unquestionable that no contract came into existence until this letter was delivered into the post-office on Monday, and that then the contract became complete: Code, section 2728; 4 *Georgia Reports*, 1; 5 *Ibid.*, 167. For an interesting article on contracts by letter, see 7 American Law Review, 433.

6. At first view there may seem to be a taint of illegality upon the contract, because of the request to post the letter having been made on Sunday, and of the subsequent posting of it in pursuance of that request. There is certainly here some resemblance to an agency created on Sunday and executed on Monday. But the act requested was simply a mechanical one, and nothing was to be done towards its performance till the Sabbath had ended. To treat such a request as the delegation of a *power* or the creation of an *authority*, and to set aside an act done during the week, as mere matter of favor, because the request to do it was made on Sunday, would be over strict. So nice an application of law to Sunday transactions would scarcely leave a man free to direct his son or his servant on Sunday night where to commence ploughing next morning. But if the posting of the letter was strictly the execution of an agency created on Sunday, the act of posting was, in itself, lawful, and if not lawfully authorized, was susceptible of being lawfully ratified and adopted: Code, section 2192; 9 N. H., 500. And see 24 Vt., 187, 317; 18 *Ibid.*, 379; 35 Me., 143; 49 *Ibid.*, 432; 27 Vt., 272; 9

Allen, 452; 3 Foster, 229; 44 *Georgia Reports*, 541. We think, however, it is not a breach of law to hand even a business letter, on Sunday, to another, and request a conveyance of it to the post-office, to take place on the ensuing day; and that a letter thus dealt with may be the medium of closing a lawful contract.

7. One of the grounds in the motion for new trial involves the failure of complainant's counsel to erase from one of the letters which went out with the jury, a memorandum, made by himself, of dates as to the time of its reception, and of the writing and mailing of the reply. On objection to the memorandum as evidence, made by the opposite party, the counsel promised in court to erase it. Doubtless it was forgotten. But it did no harm. The evidence was substantially in conformity to the memorandum, and the jury were well warranted in finding as they did. The real pressure of the case was upon notice. The jury thought there was sufficient notice, actual or constructive, and the judge below was satisfied with their finding. Such a question is peculiarly one for the jury, and we think they did not draw their conclusion without premises to warrant it.

We affirm the judgment.