GINSBERG *v.* CAPITOL CITY WRECKING CO.

1. APPEAL AND ERROR—MORTGAGES—ACCOUNTING—WITHDRAWAL OF CROSS APPEAL—QUESTIONS REVIEWABLE.

   In mortgagor's suit for accounting, brought against mortgagee's assignee, a firm which had furnished some materials for construction of house for which the mortgage of $5,500 had been originally given, where plaintiff had approved disbursement of $2,750 by taking credit therefor in a previous action and had withdrawn cross appeal as to trial court's finding relative to such approval, the validity of the mortgage to the extent of $2,750 would not be before the Supreme Court.

2. MORTGAGES—ADVANCEMENTS—CONSIDERATION.

   The making of a loan of money to a mortgagor would constitute a debt but it is permissible to show that the mortgage was made to cover future advances and that actually no consideration passed.

3. SAME—DEBT—ASSIGNMENT.

   The mortgage being a mere security for the debt or liability secured by it, the debt or liability is the principal and the mortgage but an incident so that anything transferring the debt transfers the mortgage with it.

4. SAME—ASSIGNMENT.

   An assignment of a mortgage without the debt secured thereby is a mere nullity.

5. SAME—PAYMENT, RELEASE OR EXTINGUISHMENT OF DEBT.

   Payment, release, or anything which extinguishes a debt, extinguishes the mortgage given as security therefor.

6. SAME—CREATION OF LIEN—RECORDING—ASSIGNMENT.

   A mortgage without any debt, liability, or obligation secured by it can have no present legal effect as a mortgage or incumbrance upon the land nor would mere recording give it more effect to third persons than it had between the parties, and where no lien upon the property had been created none was assignable.

7. SAME—AUTHORIZATION TO DISBURSE FUNDS FOR CONSTRUCTION—ASSIGNMENT.

   Mortgagors' authorization to mortgagee by way of simultaneously executed separate instrument to disburse proceeds of

loan for payment of costs due builder, which authorization was not assigned to mortgagee's assignee, a materialman which had furnished materials before acquiring the mortgage, did not inure to benefit of mortgagee's assignee where it does not appear that the materials could have been delivered in reliance upon the authorization.

8. CONTRACTS — IMPLIED CONTRACTS — UNJUST ENRICHMENT — MATERIALMEN.

Materialman which dealt solely with contractor in furnishing materials for a house and did not have accounts with owners or send statements to them, which contractor did not represent himself to be the owners' agent and had no authority to pledge the owners' credit with the materialman, may not claim right to recover for materials furnished on theory of unjust enrichment.

Appeal from Ingham; Hayden (Charles H.), J. Submitted January 13, 1942. (Docket No. 47, Calendar No. 41,838.) Decided March 17, 1942.

Bill by Albert Ginsberg and wife against Capitol City Wrecking Company, a Michigan corporation, for an accounting, an injunction restraining the holding of a foreclosure sale, and other relief. Cross bill by defendant for an accounting and other relief. From decree, defendant appeals and plaintiffs cross-appeal. Affirmed.

*Pierce, Planck & Ramsey,* for plaintiffs.

*Rathbun & Arvidson,* for defendant.

SHARPE, J. This is a chancery suit for an accounting arising out of the construction of a house for plaintiffs.

On September 1, 1939, plaintiffs entered into a contract with Abram M. Fisher, doing business as Fisher & Weber, wherein it was agreed that Fisher would build a house for plaintiffs for the sum of $6,500, payable $1,000 upon the execution of the

contract and the balance of $5,500 when the house was completed, which event was to occur on or before January 1, 1940. The contract contained the following provision:

"If financed under Federal housing act insurance mortgage plan, upon completion of second F.H.A. inspection, owner agrees to forthwith execute mortgage against stated premises and/or necessary instruments which may be required and draw all sums available and pay same to the builder to apply on account of the contract price."

Plaintiffs made an application for a Federal housing administration insured mortgage in the sum of $5,500 for the purpose of financing the building. This application was submitted to Melvin F. Lanphar & Company which was an approved F.H.A. mortgagee. On November 29, 1939, plaintiffs gave the Lanphar company their promissory note for $5,500 and a mortgage for the same amount on the property to secure the note. On the same day, plaintiffs authorized the Lanphar company to make disbursements:

"For payment of costs, prepaid items and moneys, due our builder for the construction and erection of our residence upon said property; and all sums so advanced are to be charged against said mortgage loan."

Sometime during the month of November, 1939, defendant, Capitol City Wrecking Company, began making delivery of materials for the construction of the house; and on November 10, 1939, defendant company sent to plaintiffs notices of intention to claim a lien.

A short time later, defendant and the Bank of Lansing entered into certain transactions whereby

defendant borrowed $2,750 from the Bank of Lansing and gave its notes to the bank covering this amount on November 29, 1939, and December 6, 1939. This money was credited by the Bank of Lansing to a ''construction account'' of the Service Lumber Company, a separate corporation whose officers and stockholders were the same as the defendant. From this $2,750, which defendant borrowed from the bank, $1,633.89 was paid to Fisher, the contractor who was building the house, the sum of $500 was credited to defendant's own account for materials which it had furnished to the contractor, and substantially the full balance of the $2,750 was paid to several parties who had furnished labor and materials for the job.

Plaintiffs and the contractor, Fisher, got into a dispute over the manner in which the house was being constructed, and the contractor never completed the house. The Federal housing administration commitment expired and on March 9, 1940, Melvin F. Lanphar & Company indorsed the Ginsberg note to the Bank of Lansing and also assigned the mortgage to the bank, which had previously advanced to defendant the sum of $2,750.

On March 15, 1940, defendant filed a claim of lien for $2,335.88, which is substantially the amount it claims is due it for materials furnished on the job. On May 24, 1940, the Bank of Lansing assigned to defendant the mortgage.

In June, 1940, plaintiffs filed a bill of complaint in the circuit court of Ingham county to cancel the construction contract with Fisher and alleged that in addition to the cash paid Fisher, they had executed a mortgage for the purpose of obtaining a construction loan in the amount of $2,750 which sum had been paid for the account of plaintiffs to the

contractor, subcontractors, materialmen and laborers.

On August 8, 1940, defendant, as assignee of the mortgage, began proceedings to foreclose the mortgage claiming that the principal and interest then due the defendant was $5,212.57. This amount comprised the following items: $2,749.90 which defendant had borrowed and disbursed; $2,331.58 for materials furnished; and $131.09 interest.

In October, 1940, plaintiffs filed the bill of complaint in this suit in which it is admitted that there is due defendant from plaintiffs the sum of $2,750 under the mortgage.

The trial court held that the mortgage was given to secure advancements authorized to be made by Lanphar company under the collateral authorization executed by plaintiffs; that the authorization was given the Lanphar company, but not to future holders of the mortgage; that since the Lanphar company had made no advancements for the benefit of the mortgagors (plaintiffs), there was no consideration for the mortgage; however, on the principle that one seeking equity must do equity, the mortgage is security for $2,750 because plaintiffs had approved the disbursement of $2,750 by taking credit therefor in the action against Fisher, the contractor. As to the balance of defendant's claim, the trial court held that defendant would have to resort to the lien law. Both parties appealed, but later plaintiffs withdrew their cross appeal.

In the case at bar, the trial court said:

"Plaintiffs having come into a court of equity are required to do equity. They have approved the advancements that were made in reliance upon the mortgage and benefited by them and they may not now deny their liability under the mortgage for the $2,750 advanced by defendant."

Plaintiffs having withdrawn their cross appeal, the validity of the mortgage to the extent of $2,750 is not now before our court.

It is urged by defendant that the mortgage is valid to the extent of the amount named therein. It is to be noted that the note and mortgage executed by plaintiffs recite that a loan of $5,500 has been made by the Lanphar company. If the loan was actually made by the Lanphar company, it would constitute a debt. It is permissible to show that actually no consideration passed, but that the mortgage was to cover future advances.

Plaintiffs rely upon *Ladue* v. *Railroad Co.*, 13 Mich. 380 (87 Am. Dec. 759), to establish the principle that to create a valid mortgage, there must exist a debt or liability or some binding contract for which the mortgage is security. In that case we established the following principles: that a mortgage, being a mere security for the debt or liability secured by it, the debt or liability secured is the principal and the mortgage but an incident or accessory; that anything which transfers the debt, transfers the mortgage with it; that an assignment of the mortgage without the debt is a mere nullity; and that payment, release, or anything which extinguishes the debt, extinguishes the mortgage. We there said:

"These propositions being established, the necessary result is that the mortgage instrument, without any debt, liability or obligation secured by it, can have no present legal effect as a mortgage or an incumbrance upon the land. It is but a shadow without a substance, an incident without a principle; and it can make no difference in the result whether there has once been a debt or liability which has been satisfied, or whether the debt or liability to be secured has not yet been created. * * * At most,

the difference is only between the nonentity which follows annihilation, and that which precedes existence.

"The instrument can only take effect as a mortgage or incumbrance from the time when some debt or liability shall be created, or some binding contract is made, which is to be secured by it. Until this takes place, neither the land nor the parties, nor third persons, are bound by it. It constitutes, of itself, no binding contract. Either party may disregard or repudiate it at his pleasure. It is but a part of an arrangement, merely contemplated as probable, and which can only be rendered effectual by the future consent and further acts of the parties. * * *

"The mere recording of the instrument would not make it a mortgage or incumbrance in legal effect, if it were not so before, nor give it a greater effect as to third persons than it had between the parties."

In the case at bar, no money was advanced by the Lanphar company, nor is there any evidence that the Lanphar company promised or agreed to pay the materialmen and secure by the mortgage instrument any money so disbursed.

Plaintiff Albert Ginsberg testified:

"*Q.* * * * You didn't expect when you signed this mortgage * * * Lanphar & Company or Bank of Lansing or anybody was going to pay you $5,500?
"*A.* No."

Herman Sable, secretary of the Lanphar company, testified:

"We did not at any time agree to furnish construction money from the proceeds of the loan."

It would appear that the arrangements between the parties must necessarily have been that if and

when the Lanphar company paid any obligation owing to the contractor, repayment to the Lanphar company by the Ginsbergs was to be secured by the mortgage. It would follow that the mortgage instrument could not create a valid, subsisting lien on the property until the mortgagee did pay such an obligation owing to the contractor. Lanphar company never having paid anything by virtue of the mortgage instrument, such instrument never created a lien upon the property. Citation of authority is unnecessary to establish the principle that if the Lanphar company had no lien, it could assign none.

It is urged by defendant that the authorization inured to its benefit. But it appears that the Lanphar company did not assign the authorization to the bank; and that defendant delivered all materials before it acquired the mortgage. It does not seem possible that the materials were delivered in reliance upon the authorization in view of these facts. Moreover, defendant's ledger shows that the account for the materials was with the contractor. These facts are fatal to the theory advanced by defendant.

Defendant also urges that it should recover under the doctrine of unjust enrichment. The facts in this case do not support such a theory. It is an established fact that defendant dealt solely with the contractor; its accounts were with the contractor. It sent statements to the contractor and did not send any statements to the Ginsbergs. The contractor did not represent himself to be the agent of the Ginsbergs, nor did he have any authority to pledge the Ginsbergs' credit with defendant. In view of these circumstances, it cannot be said that the Ginsbergs were unjustly enriched at the expense of the defendant.

Because of the withdrawal by plaintiffs of their cross appeal, the mortgage to the extent of $2,750 may stand as a valid mortgage against the property. It follows that defendant's claim under the mortgage in excess of the above amount must be denied.

The decree of the trial court is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred. WIEST, J., did not sit.