**In re MORTGAGE FUNDING, INC., Debtor.**

**Bankruptcy Nos. BK–LV–84–276, 84 MLV 557, 84 MLV 628, 84 MLV 707.**

United States Bankruptcy Court, D. Nevada.

April 2, 1985.

Robert Peccole, Leonard Schwartzer, James Wadsworth, Las Vegas, Nev., for movants.

Whitney Warnick, Las Vegas, Nev., for debtor.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Bankruptcy Judge.

These three motions to lift stay require the Court to determine when the debtor's sale of promissory notes secured by deeds of trust in the secondary mortgage market is sufficiently complete to warrant exclusion from the estate under § 541(d) of the Bankruptcy Code. The Court must also determine what interest, if any, the debtor has in these notes and deeds of trust.

The debtor, Mortgage Funding, Inc., was in the business of mortgage brokering. The debtor made loans secured by deeds of trust on real property. The money used to fund the loans typically came from investors. Each investor provided the debtor with money to fund a specific loan as identified in a loan package given to the investor. In return, the investor was assigned a promissory note made by the borrower payable to the debtor. The assigned note was secured by a deed of trust on the borrower's real property. The investor then au-thorized the debtor to collect and disburse the payments on the assigned note and deed of trust. The debtor also typically executed a Repurchase Agreement under which the debtor agreed to repurchase the assigned note and deed of trust if the note ever fell into default.

In order to attract pension funds and as additional security, the debtor executed an additional promissory note, payable to the investor in the amount of the investment, together with the Repurchase Agreement above described. Mortgage insurance was also provided by a large institutional insurer of secondary mortgages. The interest rate paid on the debtor's new note was lower than the rate paid on the borrower's assigned note. The debtor collected the payments due on the assigned note, but paid the investor the amount due on the new note issued as additional security. The difference between the higher return on the assigned note and the lower return on the new note was retained by the debtor as a servicing fee.

As part of its records, the debtor maintained Trust Deed Information sheets for each investor. The Trust Deed Information sheet contained the name of the borrower (the maker of the assigned note and deed of trust); the investors' names; the property address (street address of the property legally described in the assigned deed of trust); the appraised value of the property; and, the amount invested.

Often, loans made directly by the debtor or an original investor were refinanced or reassigned. The debtor typically used funds from other investors to refinance specific loans. The refinancing investor generally invested the outstanding principal balance on the borrower's note as of the date of refinancing. In return, the refinancing investor received an assignment of the borrower's note and deed of trust from either the original investor or the debtor.

As with the original investor, the debtor executed a new promissory note payable to the refinancing investor in the amount in-

vested. The interest rate on this new note was lower than that of the original borrower's note. The debtor collected the payments due on the borrower's note, but paid the new investor only the payments due on the new note issued by the debtor. The difference between the returns on the respective notes was retained by the debtor as a servicing fee.

All of these movants are refinancing investors. Each movant provided the debtor with money to refinance a specific loan. In the cases of movants Mariano Jose Pablico and Nenita Pablico, and Gloria DeLeo, the amount invested was the outstanding principal balance on the borrower's note. Movants L.E. Miner and Mary M. Miner invested less than the outstanding principal balance of the refinanced promissory note. In return, each movant was assigned the original note and deed of trust made by the borrower. Movants Mariano Jose Pablico and Nenita Pablico received assignments from the International Central Bank & Trust Corp. and Joan M. Kimble. Movant Gloria DeLeo received assignments from the Farinola Medical Corp., and Carlo A. Profico and Edith Profico. Movants L.E. Miner and Mary M. Miner received an assignment from the debtor. Each of the assignments of the respective deeds of trust was properly recorded.

None of the movants have had possession of any of the notes or deeds of trust. The debtor has not paid any monies to the movants after the Chapter 11 petition was filed on April 29, 1984. The movants seek relief from the automatic stay to take possession of the assigned notes and deeds of trust.

The movants contend that they invested in specific assigned notes and deeds of trust. Their investments were simply secured by the new notes issued by the debtor "as additional security". The movants argue that they hold title to the assigned notes and deeds of trust, or at least the beneficial interest referred to in Bankruptcy Code § 541(d). Therefore, the debtor had no interest in the notes and deeds of trust when the petition was filed and, thus,

the estate received no interest in the property. *See In re Fidelity Standard Mortgage Corp.*, 36 B.R. 496 (Bkrtcy.S.D.Fla. 1983).

The trustee opposes the motions, arguing that the movants invested in the new notes issued by the debtor, which were merely secured by the assigned notes and deeds of trust. Under Nevada law, a security interest in a note, even one secured by a deed of trust, is perfected only through possession. N.R.S. 104.9305. Since none of the movants ever possessed the instruments, their security interests were never perfected and, thus, the movants are unsecured creditors. *See In re Staff Mortgage & Investment Corp.*, 625 F.2d 281 (9th Cir.1980); *In re Bruce Farley Corp.*, 612 F.2d 1197 (9th Cir.1980); *Matter of Staff Mortgage & Investment Corp.*, 550 F.2d 1228 (9th Cir. 1977).

■ Property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Section 541(a), however, does not vest the estate with any greater property rights than the debtor holds when the petition is filed. If the debtor holds bare legal title to property, only bare legal title passes to the estate. Section 541(d) specifically addresses the case of a debtor holding bare title to a mortgage:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Section 541(d) was enacted to eliminate uncertainties that had developed in the national secondary mortgage market. The legislative history of § 541(d) clearly indi-

cates Congress' intent to protect the integrity of the secondary mortgage market:

The seller of mortgages in the secondary mortgage market will often retain the original mortgtge notes and related documents and the seller will not endorse the notes to reflect the sale to the purchaser. Similarly, the purchaser will often not record the purchaser's ownership of the mortgages or interests in mortgages under State recording statutes. These facts are irrelevant and the seller's retention of the mortgage documents and the purchaser's decision not to record do not change the trustee's obligation to turn the mortgage or interests in mortgages over to the purchaser. The application of section 541(d) to secondary mortgage market transactions will not be affected by the terms of the servicing agreement between the mortgage servicer and the purchaser of the mortgages. Under section 541(d), the trustee is required to recognize the purchaser's title to the mortgages or interests in mortgages and to turn this property over to the purchaser. It makes no difference whether the servicer and the purchaser characterize their relationship as one of trust, agency, or independent contractor.

The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and that purchasers of mortgages will be able to obtain the mortgages or interests in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller.

Thus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate. 124 Cong Rec S 17413 (daily ed. Oct. 6, 1978).

In *In re Fidelity Standard Mortgage, Corp.,* 36 B.R. 496 (Bkrtcy.S.D.Fla. 1983), the court was required to determine when the sale of a mortgage should be deemed sufficiently complete to warrant protection under § 541(d). The court, after noting the strong congressional policy of preserving the integrity of secondary mortgage market transactions, concluded that § 541(d) would protect sales in the secondary mortgage market from challenge by a bankruptcy trustee if:

(1) the investor and the debtor agreed on the specific mortgage to be assigned to the investor;

(2) the debtor has, in writing, evidenced its assent to the assignment;

(3) the investor has paid in full for the mortgage interest; and

(4) the mortgage interest exists, having been funded and not repaid or foreclosed.

*In re Fidelity Standard Mortgage,* 36 B.R. at 500.

The *Fidelity Standard Mortgage* Court decided equitably the issue facing this Court. This Court adopts the *Fidelity Standard Mortgage* rule, and applying it to this case finds that:

(1) the debtor and the movants agreed that the movants would be assigned a specific note and deed of trust;

(2) the debtor has assented to the assignments in writing;

(3) the movants have paid the debtor in full for their interests in the assigned notes and deeds of trust;

(4) the assigned notes and deeds of trust exist and have not been repaid or foreclosed;

(5) the debtor has an interest in the assigned notes and deeds of trust which consists of the portion of the monthly payment that exceeds the amount due to the movants under the new note issued as additional security; and

(6) the debtor's limited interest in the assigned notes and deeds of trust

passed to the debtor's estate on the date the petition was filed.

Based upon these findings, IT IS ORDERED that the motions to lift stay to allow the movants to take possession of the assigned notes and deeds of trust are denied; the trustee shall continue to collect the payments made on the assigned notes and deeds of trust; the trustee shall pay the movants all amounts presently due under the respective new notes made by the debtor, together with any prepayments of principal made by the borrower; the trustee shall continue to pay the movants the monthly payments due them under the respective notes made by the debtor and payable to the movants until such notes are fully paid or otherwise satisfied; and, the trustee shall retain the difference between the amounts collected on the assigned notes and the amounts paid on the notes issued by the debtor, for the benefit of the estate.