In re ATLANTIC MORTGAGE
CORPORATION, Debtor.

James V. McTEVIA, Operating Trustee,
Atlantic Mortgage Corporation, a
Michigan corporation, Plaintiffs,

v.

Marie ADAMO, et al., Defendants.

Bankruptcy No. 84–01814–R.
Adv. No. 85–1184–R.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Jan. 13, 1987.

Peter Nathan, Detroit, Mich., for plaintiff.

## ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

STEVEN W. RHODES, Bankruptcy Judge.

This adversary proceeding is before the Court on the trustee's motion for summary judgment on his complaint to avoid the real estate liens claimed by the debtor's investors. The trustee contends that as a matter of law, his strong arm powers under 11 U.S.C. § 544(a)(1) defeat the investors' claims arising from mortgages and underlying promissory notes that the debtor had assigned to them.

The trustee has no objection to a summary judgment in favor of any investor who has possession of an original underlying promissory note. The Court denies the trustee's motion for summary judgment as to nine defendants who have demonstrated the existence of genuine issues of material fact under Bankruptcy Rule 7056. However, the Court grants summary judgment in favor of the trustee as to the remaining defendants.

### I. *The Facts*

The debtor, Atlantic Mortgage Corporation, was a mortgage lender. Atlantic's business is summarized in the affidavit of Michael Anspach, the former president of Atlantic. Anspach indicated that Atlantic lent money to borrowers in exchange for promissory notes (hereinafter "underlying notes") secured by first, second, or wraparound mortgages on real estate. For operating funds, Atlantic borrowed from investors, some 200 of whom are the defendants in this case.

In a transaction with an investor, Atlantic generally assigned a mortgage and an underlying note, which were intended as security for the loan. In some cases, the value of the underlying note and mortgage equalled the amount of the loan from the investor to Atlantic; in other cases, the value of the collateral did not equal the loan amount. Some investors also received personal guarantees from Anspach or other principals of Atlantic. It was generally intended that Atlantic would make monthly payments to an investor regardless of whether it had collected from the underlying borrower.

To document the transaction, Atlantic generally delivered to an investor its own promissory note and an assignment document, assigning its interest in a specific mortgage and its interest in the mortgagor's underlying note. Many investors recorded these documents in the appropriate real estate filing offices.

In addition, Anspach stated in his affidavit that "with respect to certain investors,

Atlantic ... intended to deliver the underlying borrower's note." Atlantic did not follow any regular practice in effectuating this intent, however. The original underlying note was delivered in some cases, but not in others; some investors received a copy of the underlying note. A few investors received a duplicate original of the underlying note.

## II. *The Parties' Contentions*

The trustee argues that his "strong-arm" power under 11 U.S.C. § 544(a)(1) defeats an investor's unperfected security interest in the underlying promissory note. The trustee's power to avoid liens is set forth in 11 U.S.C. § 544:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

The trustee contends that the security interest of an investor who does not have actual possession of an underlying note remains unperfected, because a security interest in a negotiable note is perfected only by possession under M.C.L.A. § 440.-9304(1):

A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subsections (4) and (5).[1]

The investors respond with several alternative arguments. First, they contend that a pledge of a promissory note together with a mortgage is a real estate transaction; therefore the investors perfected their security interests by the appropriate real estate filings. This contention is discussed in Part III, below.

Second, the investors contend that circumstances of misrepresentation, mistake, fraud, and the like make Atlantic a constructive trustee of the promissory notes for them; therefore this property is not included in the bankruptcy estate, and the investors' claims are prior to the trustee's. This argument is discussed in Part IV of this opinion.

Third, the investors contend that certain transactions involved sales, not assignments for security; therefore Atlantic had no equitable title to pass to the bankruptcy estate. This argument is discussed in Part V of this opinion.

## III. *The Investors' Security Interests*

### A. *The Uniform Commercial Code Provisions*

The investors argue that real estate law, not the Uniform Commercial Code, applies to these transactions. In support, the investors cite M.C.L.A. § 440.9104(j), which provides:

This article does not apply:

\* \* \* \* \* \*

(j) except to the extent that provision is made for fixtures in section 9313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder.

In response, the trustee contends that a security interest in an underlying note is governed by Article 9 of the Uniform Commercial Code, regardless of its relationship to real estate collateral. The trustee cites M.C.L.A. § 440.9102(3), which provides:

The application of this article [Article 9] to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply.

Thus, M.C.L.A. §§ 440.9102(3) and 440.-9104(j) present an apparent conflict in their application to these facts.

---

1. Subsections (4) and (5) do not apply here.

## B. *The Maryville Case*

In *Peoples Bank of Polk County v. Mc-Donald, (In re Maryville Savings & Loan Corp.)*, 743 F.2d 413 (6th Cir.1984), *supplemented*, 760 F.2d 119 (6th Cir.1985), the court addressed this issue. There, the Maryville Savings & Loan had assigned, as collateral for a loan from Peoples Bank, certain promissory notes secured by deeds of trust encumbering real property. Peoples Bank recorded the assignment in the appropriate real estate filing office, but did not take possession of the underlying promissory notes. After Maryville filed for bankruptcy, the trustee asserted that the bank's security interest was unperfected, because the bank had not taken possession of the underlying notes.

The court held that choosing between either real estate law or the Uniform Commercial Code,

> fail[ed] to give meaningful scope, depending on the result reached, either to § 9–102 or § 9–104(j).... We are persuaded that §§ 9–102(3) and 9–104(j) may be reconciled by holding in this case that article nine be applied in regard to the promissory notes but *not* in regard to the deeds of trust. 743 F.2d at 415–16.[2]

The court concluded from Official Comment 4 to § 9–102 that the security interest in the underlying notes should be analyzed separately from the interest in the deeds of trust:

> The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage of Blackacre. This Article [Chapter] is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article [Chapter] is applicable to the security interest thus created in the note and the mortgage. *Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. See Section 9–104(j).*

> Tenn.Code Ann. § 47–9–102 comment 4 (emphasis added).

*Id.* at 415.

Due to a 1966 amendment, Official Comment 4 as adopted in Michigan law differs from the Tennessee version on which the court relied in *Maryville.* The Michigan amended version, however, supports the result reached in *Maryville* even more clearly. It provides:

> 4. An illustration of subsection (3) is as follows:

> The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest. See Section 9–104(j). But under Section 3–304(5) recording of the assignment does not of itself prevent X from holding the note in due course. MCLA § 440.9102, Comment 4.

*See also Maryville*, 743 F.2d at 416, n. 1.

Accordingly, the Court concludes that an investor's interest in a mortgage assigned to him must be analyzed separately from that investor's interest in the corresponding underlying note.

## C. *An Investor's Security Interest in an Underlying Note*

■ Because the Uniform Commercial Code requirements for perfecting a securi-

---

**2.** Sections 9–102 and 9–104(j) of the Uniform Commercial Code are replicated in Tenn.Code Ann. §§ 47–9–102 and 47–9–104, on which the court relied in *Maryville,* and in Michigan law, M.C.L.A. §§ 440.9102 and 440.9104.

ty interest apply to such a note, an investor without possession of the underlying note holds a mere unperfected security interest. M.C.L.A. § 440.9304(1). The trustee's rights under 11 U.S.C. § 544(a)(1), equivalent to those of a judgment lien creditor, defeat the unperfected security interest. M.C.L.A. § 440.9301(1)(b).

### D. An Investor's Interest in an Assigned Mortgage

In analyzing an investor's interest in an assigned mortgage, the question becomes whether the assigned mortgage gives the investor any rights independent of the rights given to the investor by the underlying note. In a supplemental opinion in *Maryville*, the court applied state law to this issue. 760 F.2d 119 (6th Cir.1985) The court concluded that under Tennessee law, a deed of trust by itself does not carry a right to the non-foreclosure proceeds of the corresponding promissory note. The court did not decide whether a deed of trust still carries a right to foreclosure proceeds, but it intimated that the result might be different. *Id.* at 421.

In Michigan law, a mortgage which has been severed from the corresponding promissory note does not entitle the mortgage holder to collect the indebtedness or to take possession of the real property. The Michigan Supreme Court has held:

> In natural justice and equity, the principal right of the mortgagee is to the money when due, and his right to the land is only as security for the payment of the money, the debt being merely collaterally secured by the mortgage on real estate.

*Dougherty v. Randall*, 3 Mich. 581, 587 (1855), (citing *Matthews v. Wallwyn*, 4 Ves.

128, and *Dudley v. Caldwell*, 18 Conn. 218.)

More recently, that court has held:

> [T]he mortgage instrument, without any debt, liability or obligation secured by it, can have no present legal effect as a mortgage or an incumbrance upon the land.

*Ginsberg v. Capitol City Wrecking Co.*, 300 Mich. 712, 717, 2 N.W.2d 892 (1942), quoting *Ladue v. Detroit & Milwaukee Railroad Co.*, 13 Mich. 380 (1865).

Thus, if an investor's interest in the underlying debt is subordinate to the trustee's, the investor's superior interest in the mortgage does not give the investor any right to collect the debt. With the possible exception of those transactions involving sales of notes, rather than assignments for security, there is no evidence of any debt owed directly from an original mortgagor to an investor. The mortgage and assignment demonstrate that two distinct debts were intended—the mortgagor's debt to Atlantic and Atlantic's debt to the investor.

■ Consequently, the Court concludes that an investor without possession of the underlying note retains no rights incident to either the note or the mortgage. Any resulting lien on the real estate must be set aside in favor of the trustee, as the investor is merely an unsecured creditor of Atlantic.[3]

### IV. Equitable Relief for Certain Investors

### A. The Investors' Invocation of a Constructive Trust

### 1.

Although the investors invoke various equitable doctrines, the Court concludes

---

**3.** Although an investor may have thought he had a secured investment, a creditor may not ordinarily rely on its debtor to perfect the creditor's own security interest. *Associates Commercial Corp. v. Trim-Lean Meat Products*, 5 B.R. 190, 191 (Bankr.D.Del.1980), *aff'd*, 10 B.R. 333 (D.C.Del.1981). The Court will not embellish or strain the provisions of the Uniform Commercial Code to adjust the rights of the parties. "[A] fundamental purpose of Article 9 is ... to create commercial certainty and predictability by allowing third party creditors to rely on the specific perfection and priority rules that govern collateral within the scope of Article 9." *Carlson v. Tandy Computer Leasing*, 803 F.2d 391, 394 (8th Cir.1986). Where equitable relief is otherwise available to the parties, however, the Uniform Commercial Code does not proscribe its application.

that these arguments can most appropriately be addressed in the context of constructive trust doctrine. Some investors have submitted affidavits alleging facts, which if proven at trial, might justify relief under this doctrine. Accordingly, the Court finds that summary judgment is inappropriate as to these investors.

In deciding the trustee's motion for summary judgment, the Court inquires whether a genuine issue of material fact exists, *Felix v. Young,* 536 F.2d 1126 (6th Cir. 1976), viewing the evidence in the light most favorable to the defendants, who oppose the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979).

A party cannot, however, defeat an opponent's motion for summary judgment with mere allegations. Federal Rule of Civil Procedure 56(e), incorporated in Bankruptcy Rule 7056, provides:

> When a motion for summary judgment is made and supported [by an affidavit] as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

### 2.

■ Whether or to what extent a constructive trust will be imposed upon a particular asset, even by a federal court upon assets of a debtor in bankruptcy, is a matter of state law. *Jaffke v. Dunham,* 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957). *See also Clemens v. Clemens,* 472 F.2d 939, 942 (6th Cir.1972). Under Michigan law, a constructive trust can be imposed in circumstances of misrepresentation, con-

cealment, mistake, undue influence, breach of fiduciary or confidential relationship, or fraud, among others. *Potter v. Lindsay,* 337 Mich. 404, 411, 60 N.W.2d 133 (1953); *Grasman v. Jelsema,* 70 Mich.App. 745, 752, 246 N.W.2d 322 (1976); *Chapman v. Chapman,* 31 Mich.App. 576, 580, 188 N.W.2d 21 (1971). *Potter* also refers to constructive fraud, duress, taking advantage of weakness, questionable means, and accident, 337 Mich. at 410–12, 60 N.W.2d 133.

■ This remedy transfers equitable rights in property that is wrongfully acquired or unconscionably withheld, or that unjustly enriches a third party. *E.g. Omaha National Bank v. T & T Parts Warehouse,* 39 B.R. 399, 401–02 (Bankr.W.D. Mich.1984); *Kent v. Klein,* 352 Mich. 652, 656–58, 91 N.W.2d 11 (1958); *Nelson v. Woodworth,* 363 Mich. 244, 250, 109 N.W.2d 861 (1961); *Grasman,* 70 Mich. App. at 752, 246 N.W.2d 322; *Chapman,* 31 Mich.App. at 579, 188 N.W.2d 21.

A constructive trust is only appropriate, however, where there are no intervening rights of bona fide purchasers, *Potter,* 377 Mich. at 411, 60 N.W.2d 133, and where it would be inequitable not to impose a constructive trust. *Havens v. Schoen,* 108 Mich.App. 758, 762, 310 N.W.2d 870 (1981); *Arndt v. Vos,* 83 Mich.App. 484, 487, 268 N.W.2d 693 (1978).

### 3.

■ The trustee has supported his motion by an affidavit of Michael Anspach, the former president of Atlantic, describing these transactions. As a result, the Court must find that an investor has not adequately disputed Anspach's statements, thereby demonstrating genuine issues of fact, unless the investor has stated such facts in an affidavit as required by the rule.[4] *See: First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

---

4. Edward Goodman, as trustee for Moe and Rose Goodman, filed an affidavit, but it did not state any facts which could entitle him to equitable relief. It merely recited his former belief that he held a perfected security interest, without stating any reliance on Atlantic's actions in forming that belief. Consequently, summary judgment must be granted against Edward Goodman, trustee.

Accordingly, as to all investors except those in possession of an underlying note, as discussed above, and the nine investors listed below who have submitted sufficient affidavits, summary judgment shall be granted in favor of the trustee.

The following nine investors filed affidavits demonstrating genuine issues of material fact in accordance with Federal Rule of Civil Procedure 56(e): Ethel Benjamin,[5] Mildred Fritz, Kathleen Kamish, Ethel Pliskow, individually, Ethel Pliskow as trustee for Harold Pliskow, M.D., P.C., Profit Sharing Trust, Ethel Pliskow as trustee for Harold Pliskow, M.D., P.C., Pension Plan, Ghulam Qadir as trustee for Ghulam Qadir, P.C., Pension Plan, Ghulam Qadir as trustee for Ghulam Qadir, P.C., Profit Sharing Plan, and Carl Varadian.

Defendant Ghulam Qadir stated in his affidavit that Atlantic's agents showed him specific properties, inviting him to invest directly in the properties. Qadir alleged that Atlantic's agents said his investment would be secured by specific mortgages which Atlantic would service. These agents allegedly said Atlantic would retain no other interest in the properties, other than as Qadir's servicing agent. Qadir further alleged reliance on these representations in making his investments.

Some defendants have stated in their affidavits that their mortgages were discharged without their authorization. Ethel Pliskow, individually and as trustee of two employee benefit plans, alleges that Atlantic refinanced one mortgage and discharged another, both without authorization. She further states that Atlantic collected the indebtedness in full on both mortgages without remitting the proceeds, contrary to her agreement with Atlantic. Ethel Pliskow additionally states that she relied on Atlantic's president, Michael An-

spach, to assign a perfected lien because he concurrently acted as the attorney for the professional corporation for whose benefit plans Pliskow is now trustee.

Carl Varadian's affidavit states that a discharge of a mortgage purporting to bear his signature, but which he did not sign or authorize anyone to sign for him, was recorded on a different liber and page of Macomb County records than his mortgage.

Some defendants state in their affidavits that Atlantic misrepresented that the documents conveyed a properly perfected security interest. Mildred Fritz's affidavit states that a vice president of Atlantic assured her "we will always send you all of the necessary documents," and "your investments will be as safe as possible." She further stated that she invested in several Atlantic mortgages in reliance on these representations, although Atlantic delivered only a copy of the underlying note.

Ethel Benjamin similarly states in her affidavit that she was informed and believed that she had a fully perfected assignment of the underlying note as a result of Atlantic's delivery of the copy of the underlying note.

Kathleen Kamish states in her affidavit that she received a folder purporting to contain the documents listed in Atlantic's "Offering Circular." In reliance on the Offering Circular, she did not examine the documents until after the petition in bankruptcy was filed; at that time, she discovered only a copy of the underlying note. A copy of an Atlantic Securities Corporation Offering Circular, submitted with the trustee's brief (Exhibit A, Pleading 141), lists on page 5 the "Executed mortgage note, endorsed to investor" among other documents investors were to receive as part of

---

5. Ethel Benjamin's affidavit concerns her interest in two properties known as 15171 Paris Avenue, Allen Park, Michigan, and 25377 Palomino in Macomb County. These two properties were not included in her settlement with the trustee concerning another property filed on November 18, 1986.

Other investor defendants have settled with the trustee during the pendency of this adversary proceeding; obviously, this decision does not affect those investors or those settlements.

their transactions.[6] Kamish further alleged that the mortgage was for less than half the amount she invested.

When amplified by appropriate proofs and tested by trial, these allegations may meet the applicable standard for imposition of a constructive trust. Accordingly, the Court finds that the existence of genuine disputes as to these facts precludes summary judgment in these cases.

B. *The Effects of a Constructive Trust*

1.

▇▇▇ The facts in dispute are clearly material facts under Federal Rule of Civil Procedure 56. If an investor is successful in claiming a constructive trust, his rights in the mortgage and underlying promissory note will be superior to the trustee's rights. A constructive trust is not a trust at all, but a remedial device by which a beneficial interest is transferred. *Kent v. Klein*, 352 Mich. 652, 656, 91 N.W.2d 11 (1958). The equitable owner, who would have had legal title but for the mistake, fraud, etc., which warranted the imposition of the trust, receives it. The constructive trustee, who would be unjustly enriched if he were permitted to retain property which equitably belongs to another, is duty-bound to convey it. *See McCreary v. Shields*, 333 Mich. 290, 294, 52 N.W.2d 853 (1952).

Accordingly, if an investor proves at trial that a constructive trust should be imposed, that investor will be deemed to have had possession of the underlying promissory note, held for the investor by Atlantic; thus, that investor will be deemed to have perfected his security interest.

2.

▇▇▇ The Court finds that such a constructive trust would commence at the time of Atlantic's actions that justify the imposition of the constructive trust. The Michigan Supreme Court similarly allowed a constructive trust to relate back in *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.*,

259 Mich. 489, 494–95, 244 N.W. 138 (1932). The result in that case was the retroactive transfer of the ownership of property, and a right of action brought there under, from the president of a corporation to the corporation, due to a mistake. *See also United States v. Fontana*, 528 F.Supp. 137, 146 (D.C.S.D.N.Y.1981); *Central Trust Co. v. Shepard*, 29 B.R. 928, 932 (Bankr.M.D.Fla. 1983).

Allowing a constructive trust to relate back is consistent with Michigan doctrine. A constructive trust is not a technical trust. "A court of equity, in decreeing a constructive trust, is bound by no unyielding formula as the equity of the transaction must shape the measure of relief." *Olitkowski v. St. Casimir's Saving & Loan Assoc.*, 302 Mich. 303, 309, 4 N.W.2d 664 (1942). "Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done." *Haack v. Burmeister*, 289 Mich. 418, 425, 286 N.W. 666 (1939).

In the instant case, if an investor shows that Atlantic improperly withheld possession of an underlying promissory note, then the Court will regard possession as having been transferred when Atlantic first improperly withheld possession.

3.

A constructive trust will have a different effect in the case of an investor who proves that his transaction with Atlantic was an outright sale. In those cases, the constructive trust will effectively convey ownership of the documents, not mere possession. (See part V of this opinion.)

4.

▇▇▇ The Court further holds that a constructive trust can be imposed only on either the property which should have been conveyed, or on proceeds traceable from that property. *Toys "R" Us v. Esgro, Inc.*,

---

6. Atlantic Mortgage Corporation's former president, Michael Anspach, states in his affidavit that Atlantic Securities Corporation was a wholly independent corporation from Atlantic Mortgage Corporation. He was 100% shareholder of Atlantic Securites Corporation. There is thus a question of what circular Kamish relied on, and the reasonableness of that reliance.

645 F.2d 794, 797–98 (9th Cir.1981); *Wisconsin v. Reese, (In the Matter of Kennedy & Cohen, Inc.)*, 612 F.2d 963, 966–67 (5th Cir.1980), (Order of the District Court, appended to opinion). *Cf. In re Datair Systems Corp.*, 42 B.R. 241 (Bankr.N.D.Ill. 1984).

The investors urge the Court to waive the necessity of tracing proceeds, citing *Heyman v. Kemp, (In re Teltronics, Ltd.)*, 649 F.2d 1236, 1240–41 (7th Cir.1981). The *Teltronics* exception to the tracing rule of *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924), does not apply here. The *Teltronics* exception, taken from *dicta* in *Cunningham*, 265 U.S. at 11, 44 S.Ct. at 426, applies where "abandoning the rule result[s] in equal treatment of the defrauded customers." 649 F.2d at 1240.

In the present case however, Atlantic's many investors, including the defendants here, find themselves in a variety of positions as a result of Atlantic's irregular treatment of their transactions and as a result of the course of litigation. There is no opportunity for the many investors to recover *pro rata* from a common pool, and hence, defendants must identify specific property in which they have rights.

> Bankruptcy Courts must be especially careful in imposing constructive trusts on what would otherwise be property of the bankruptcy estate, since imposing such constructive trusts amounts to giving the beneficiary a non-statutory priority over other creditors in distribution of estate assets.

*Bistate Oil Co. v. Heston Oil Co.*, 63 B.R. 711, 714 (Bankr.N.D.Okl.1986), paraphrasing *U.S. v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971) (concerning a tax trust). Although this advice begs the question whether the assets equitably belong to the bankruptcy estate or to a third party, it is particularly apt with respect to the issue of tracing. Imposing a constructive trust on the assets of the estate which have not been traced to a specific constructive trust *res* disrupts the policy of the Bankruptcy Code which establishes the priority of certain creditors, and treats all others equally *pro rata*. *See* the extensive discussion of tracing in constructive trusts in bankruptcy in *Merrill v. Abbott, (In re Independent Clearing House Co.)*, 41 B.R. 985, 1000–04 (Bankr.D.Utah 1984), *aff'd in part, rev'd in part*, 62 B.R. 118 (D.Utah 1986).

Accordingly, the Court concludes that a constructive trust cannot be enforced in bankruptcy unless it attaches traceable proceeds.

### 5.

In the present case where the underlying note and mortgage are still effective, a constructive trust on possession of an underlying note would not necessitate tracing. However, an investor whose underlying note is extinguished would not benefit from a constructive trust on the note. Such an investor must point to property traceable from proceeds of the note.

Ethel Benjamin, for example, entered into a stipulation with the trustee to transfer her interest in a mortgage to its proceeds, to be held pending the outcome of this proceeding, because the mortgagors paid the debt in full.[7]

For further example, Ethel Pliskow states in her affidavit that the mortgage assigned to her for 26330 Normandy, Franklin, Michigan was re-financed. If a new mortgage or note is demonstrated to be proceeds through re-financing, a constructive trust may attach that property.

### C. *The Trustee's Arguments Against Imposition of a Constructive Trust*

The trustee contends that the policies embodied in the Bankruptcy Code override any state law doctrine concerning constructive trusts. While this assertion has merit to the extent of a conflict, it does not preclude the imposition of a constructive

---

**7.** This stipulation concerns the property known as 15171 Paris Avenue, Allen Park, Michigan, but not the property known as 25377 Palomino in Macomb County, in which Benjamin also claims an interest.

trust where it would not frustrate the policies of the Bankruptcy Code.

The trustee compares a constructive trust to an equitable lien, contending that a trustee's rights under 11 U.S.C. § 544(a)(1) are superior to those of an equitable lien holder because an equitable lien is treated under the Uniform Commercial Code as an unperfected security interest. *Starr v. Bruce Farley Corp.*, 612 F.2d 1197 (9th Cir.1980); *Hassett v. Revlon, Inc., (In re OPM Leasing Services, Inc.)*, 23 B.R. 104, 120 (Bankr.S.D.N.Y.1982). The argument lacks merit. These cases apply only to equitable liens and do not extend to constructive trusts or to equitable remedies in general.

■ Constructive trusts are enforced in bankruptcy, albeit with caution. *E.g., Wisconsin v. Reese, (In re Kennedy & Cohen, Inc.)*, 612 F.2d 963 (5th Cir.1980), *cert. denied*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); *McAllester v. Aldridge, (In re Anderson )*, 30 B.R. 995 (M.D.Tenn. 1983); *In re American Intern. Airways*, 44 B.R. 143 (Bankr.E.D.Pa.1984); *Kagan v. Martin, (In re Tufts Electronics, Inc.)*, 34 B.R. 455 (Bankr.D.Mass.1983); *Travelers Insurance Co. v. Angus*, 9 B.R. 769 (Bankr.D.Or.1981).[8]

■ Moreover, the imposition of a constructive trust means that the property is excluded from the bankruptcy estate. Under 11 U.S.C. § 541(d), such property becomes property of the estate only to the extent of the debtor's legal title and not to the extent of any equitable interest which the debtor does not hold. Thus, the imposition of a constructive trust limits the debtor's equitable interest in property which can be passed on to the trustee. *Lambert v. Flight Transportation Corp., (In re Flight Trans. Corp. Securities Litigation )*, 730 F.2d 1128, 1136–37 (8th Cir.

1984), *cert. denied sub nom., Reavis McGrath v. Antinore*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *In re Kennedy & Cohen, Inc.*, 612 F.2d at 966, (Order of District Court, appended to opinion); *Cook v. United States Commodity Credit Corp., (In re Earl Roggenbuck Farms )*, 51 B.R. 913 (E.D.Mich.1985).

■ The trustee argues that his strong-arm powers under § 544 supersede the limitations on property of the estate in § 541. Specifically, the trustee contends that through § 544, he can bring into the bankruptcy estate those assets that are subject to a constructive trust that attaches after the bankruptcy petition is filed.

The difficulty with this argument is that the constructive trusts arose, if at all, pre-petition. As noted above, a constructive trust arises when the events which result in the constructive trust occur. Thus in this case, the constructive trusts arose when the investors were defrauded either in the initial transactions or later when Atlantic disposed of collateral. In any case these events occurred before the filing of the bankruptcy petition.

As a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own. Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings. *Vineyard v. McKenzie, (In the Matter of Quality Holstein Leasing )*, 752 F.2d 1009,

**8.** *Cf. Torres v. Eastlick, (In re North American Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir.1985), *amended*, 774 F.2d 1390 (9th Cir. 1985), where the court would not impose a constructive trust under circumstances in which state law would permit it, but which did not rise to the level of fraud, when such a trust would

allow recovery for one group of the debtor's customers, but not others, when no equitable principle distinguished the two groups.

In the instant case, the nine investors have alleged facts which on equitable grounds may distinguish them from other defendants.

1013–1014 (5th Cir.1985). *See also Flight Trans. Corp.* at 1136–37.

The Court also rejects the trustee's argument that constructive possession cannot be used to perfect a security interest. Unquestionably, a debtor is not ordinarily an agent in possession for its secured creditor. Official Comment 2 to M.C.L.A. § 440.9305; *Starr v. Bruce Farley Corp.,* 612 F.2d 1197 (9th Cir.1980); *Huffman v. Wikle, (In re Staff Mortgage and Investment Corp.),* 550 F.2d 1228 (9th Cir.1977); *In re North American Builders,* 320 F.Supp. 1229 (D.Neb.1970). These authorities, however, do not address cases in which the additional equitable considerations warrant the imposition of a constructive trust.

A constructive trust is particularly appropriate to perfect the investor's security interest if the trust arises from the very actions which prevented the investor from perfecting his own position. In such circumstances it is disingenuous to assert that the investor should have protected himself by taking possession which Atlantic denied him. This reasoning was approved by the court in *dicta* in *Bruce Farley Corp.:*

> Finally, appellee argues that even if a constructive trust might otherwise be available, the policy of the Bankruptcy Act is adverse to the recognition of such a claim in bankruptcy where the party making such a claim failed to comply with available procedures for perfecting a legal lien. [Citations omitted.] Whatever the validity of this argument in other contexts, it cannot apply when the party was prevented from taking possession and thus perfecting his legal lien by the very wrongful detention which is the grounds for the claim for relief based upon constructive trust. To hold otherwise would leave the parties in appellants' position no way to protect themselves short of filing an action to recover possession of the instruments. 612 F.2d at 1201.

**9.** The trustee has raised several other arguments which the Court has considered but found not

Similarly, in *Craig v. Union County Bank, (In re Crabtree ),* 48 B.R. 528, 532 (Bankr.E.D.Tenn.1985), a bank mistakenly retained possession of property securing a note when it assigned the note to an assignee. The court imposed a constructive bailment and held that the bank was a constructive bailee for the assignee.

In conclusion, the Court rejects the trustee's legal arguments against the imposition of a constructive trust in these circumstances.[9]

### V. *The Transactions Involving Sales of the Underlying Promissory Notes*

■ Some investors have alleged in affidavits that their transactions with Atlantic involved sales of the underlying promissory notes, not assignments for security. For example, Kathleen Kamish alleges that she purchased the underlying note, relying upon Atlantic's "Offering Circular." This circular, a copy of which was submitted with the pleadings, advertises securities for sale. (Exhibit A, pleading 141) The trustee, however, contends that Atlantic's transaction with Kamish was a secured loan, not a sale, citing Kamish's statement that she received a note executed by Atlantic as obligor, guaranteed by Michael Anspach, as part of the transaction.

Ghulam Qadir also alleges reliance upon Atlantic's representations that Atlantic would act only as servicing agent on the mortgages and would have no other interest in the real estate.

Whether these transactions constitute a sale, and if so, whether the securities advertised for sale were Atlantic's notes or the underlying promissory notes, are questions of fact.

The question whether the underlying promissory notes were sold is material. 11 U.S.C. § 541(d) excludes certain property from the bankruptcy estate, specifically exemplified by equitable interests in secondary mortgage market transactions.

worthy of further discussion.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, *such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest,* becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. [Emphasis added.]

In enacting this provision, Congress anticipated disputes about whether such transactions are sales or secured loans.

The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and that purchasers of mortgages will be able to obtain the mortgages or interests in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller.

124 Cong.Rec. S 17,413 (Oct. 6, 1978). *See also* 124 Cong.Rec. H 11,096 (Sept. 28, 1978).

The legislative history was interpreted in *In re Columbia Pacific Mortgage, Inc.,* 20 B.R. 259, 262 (Bankr.W.D.Wash.1981) to embody an "express purpose of Congress.... to exempt secondary mortgage market transactions from compliance with state recording statutes and Article 9 of the Uniform Commercial Code...."

In *Colin v. Fidelity Standard Mortgage Corp.,* 36 B.R. 496, 500 (Bankr.S.D.Fla. 1983), the court reviewed the factors to be considered in determining whether § 541(d) would apply to protect a sale in these circumstances:

If the investor and debtors agreed on what specific mortgage interest was to be assigned to the investor, with the debtors' assent being evidenced by any writing which links the investor and the specific mortgage interest; if the investor paid in full for the mortgage interest; and if that mortgage was in existence (having been funded and not repaid or foreclosed); then the plaintiffs' interests in the various mortgages should be protected under § 541(d). If, on the other hand, the particular facts represent a transaction in progress, with no sale complete, or if the documentation instead represents an attempt by the debtors to defraud investors or has some other basis than the necessities of the secondary mortgage market, it will not be protected by § 541(d).

*See also In re Mortgage Funding, Inc.,* 48 B.R. 152, 155 (Bankr.D.Nev.1985).

As noted in *Fidelity Standard,* a purpose of § 541(d) is to protect secondary mortgage market transactions from being reformed in bankruptcy, but not to protect or remedy fraud. After reviewing the mortgage lender's "unorthodox" business practices, 36 B.R. at 497, and noting that the sufficiency of recordation and delivery varied among transactions, the court created a presumption that the transactions were handled irregularly in order to facilitate the transfer and servicing of mortgages.

Although there were slight suggestions of fraud and ignorance of the mortgage business or of good business practice generally, there was insufficient evidence that any of these was the reason for the debtors' failure to execute or record assignments of mortgages. Therefore the presumption stands and the debtors' operations generally will be deemed to be sanctioned by § 541(d). *Id.* at 500.[10]

---

10. *Cf. Beutel v. Joanis,* (*In re Investment Sales Diversified, Inc.*), 38 B.R. 446, 449–50 (Bankr.D. Minn.1984), in which the court found the § 541(d) exception for secondary mortgage market transactions inapplicable where the mortgages had been retained through inadvertence, rather than for servicing.

These authorities indicate that whether these transactions involved sales or secured loans involve substantial questions of fact not suitable for resolution at this time. Accordingly, the Court finds that there are genuine issues of material fact concerning the application of 11 U.S.C. § 541(d) to these transactions. For this additional reason, the Court denies the motion for summary judgment as to defendants Kamish and Qadir.

## VI. *Conclusion*

Accordingly, IT IS HEREBY ORDERED that the trustee's motion for summary judgment be denied as to any defendant who has demonstrated possession of an underlying promissory note. Declaratory judgment will be entered to the effect that such an investor has a valid perfected security interest in the underlying promissory note and mortgage, and that such interest is superior to any rights of the trustee.

IT IS FURTHER ORDERED that the trustee's motion for summary judgment be denied as to nine defendants who have filed affidavits stating facts which may entitle them to equitable relief. Those defendants are: Ethel Benjamin, Mildred Fritz, Kathleen Kamish, Ethel Pliskow, individually, Ethel Pliskow, as trustee for Harold Pliskow, M.D., P.C., Profit Sharing Trust, Ethel Pliskow, as trustee for Harold Pliskow, M.D., P.C., Pension Plan, Ghulam Qadir as trustee for Ghulam Qadir, P.C., Pension Plan, Ghulam Qadir, as trustee for Ghulam Qadir, P.C., Profit Sharing Plan, and Carl Varadian.

IT IS FURTHER ORDERED that the trustee's motion for summary judgment be granted as to any other defendant who has not demonstrated possession of an underlying promissory note, who has not filed an affidavit alleging facts which may give rise to equitable relief, and who has not executed a settlement with the trustee. Declaratory judgment will be entered to the effect that such an investor has an unsecured claim only, and that such an investor's legal rights in an underlying promissory note and mortgage are inferior to the trustee's legal rights.

An appropriate order may be submitted pursuant to Local Bankruptcy Rule 120.