[No. 33852.   Department One.   May 16, 1957.]

FRANK PAGANELLI *et al.*, *Respondents*, v. BERG S. SWENDSEN, *Defendant*, WIER HOSTETLER *et al.*, *Appellants.*[1]

[1]Reported in 311 P. (2d) 676.

*Burgunder & Flanders, Croson, Johnson & Wheelon* and *H. Orley Solomon,* for appellants.

*Lycette, Diamond & Sylvester,* for respondents.

HILL, C. J.—In this quiet title action, we are confronted with the questions of whether the defendant, Wier Hostetler, is a good-faith purchaser and whether defendant Hughbanks, Incorporated (hereinafter referred to as Hughbanks), is a good-faith mortgagee.

Laws of 1927, chapter 278, § 2, p. 671 (cf. RCW 65.08.070, Rem. Rev. Stat., § 10596-2), provides that an unrecorded deed is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs, or devisees, whose conveyance is first duly recorded. The reason for such legislation, and the public policy behind it, is stated at some length in *Cunningham v. Norwegian Lutheran Church of America,* 28 Wn. (2d) 953, 184 P. (2d) 834 (1947).

The property to which the plaintiffs seek to quiet title (hereinafter referred to as tract A) was conveyed to them by warranty deed, dated August 13, 1947, executed by Eugene Swendsen, a single man. Swendsen retained title to an abutting tract (hereinafter referred to as tract B). This deed was not recorded until January 28, 1955, which was subsequent to the recording of a deed to the defendant Hostetler of tract A, and the recording of a mortgage thereon by Hostetler to Hughbanks.

The plaintiffs, who live in Yakima, had improved tract A immediately after their acquisition of it by constructing a drainage system, erecting an open-front building of a type in common use for the purpose of displaying fruit and produce, and blacktopping a substantial portion of the tract. The total cost of these improvements was approximately four thousand nine hundred dollars. There were no subsequent improvements of any consequence. No use was ever made of the property except during the fruit season. The fruit stand has not been used since the fruit season of 1951, with the exception of a three-week period in July, 1954.

In August, 1954, Marie Stewart—acting as real estate agent for the plaintiffs—placed two "For Sale" signs on tract A that gave her name, telephone number, and address. During 1953 and 1954, tract A was used for public parking and was regularly used for that purpose by Blacktop Pavers, Inc. In 1952, Eugene Swendsen died testate, leaving all of his property to his father and mother, or the survivor of them. However, both predeceased him, and his brother, Berg (his sole heir), was appointed and qualified as administrator, with will annexed. As such, he listed tracts A and B in the inventory of the estate by a description which did not segregate but included both of them.

Hostetler, a personal friend of Berg Swendsen, knew that Swendsen, as administrator, had sold tract B without the assistance of a real estate agent. At about that time (the summer of 1953), Hostetler discussed with Swendsen the possibility of purchasing tract A. Somewhere in the negotiations, Swendsen told Hostetler that he "had written over to Yakima to find out about or to clear the title to the property."

Later, Swendsen, individually and for a consideration of six thousand dollars, conveyed tract A to Hostetler by a warranty deed, dated November 1, 1954, and recorded November 16, 1954. Hostetler was issued a title insurance policy on this property, dated November 16, 1954, but not delivered until December 21, 1954. The delay was to permit the closing of the estate, tract A being distributed to Berg Swendsen by the decree of distribution.

The trial court found that Hostetler had actual notice of the plaintiffs' interest in tract A, because he "had been told by defendant Berg Swendsen that he, Berg Swendsen, had written over to Yakima to find out about or to clear the title to the property which is the subject matter of this suit." The trial court further found that Hostetler had constructive notice of plaintiffs' interest in the property, because of the cumulative effect of the following: (1) the plaintiffs improved the property; (2) Blacktop Pavers, Inc., parked its trucks there; (3) Marie Stewart placed two of her "For Sale" signs on the property; (4) Hostetler knew that Berg Swendsen did not sell tract B through a real estate agency; (5) the fruit stand was open for three weeks in July, 1954; and (6) the records of the King county treasurer's office showed that tax statements had been mailed to Inland Fruit Co., care of Frank Paganelli, at Yakima.

Hostetler appeals from a judgment quieting title in the plaintiffs, contending that the trial court erred in finding that he did not act in good faith.

We do not concern ourselves with the trial court's findings adverse to defendant Hughbanks, or with Hughbanks' appeal, because, if Hostetler was a purchaser in good faith, as we decide that he was, it is evident that the plaintiffs were not entitled to any relief against Hughbanks. Except for the ultimate and decisive fact of whether Hostetler acted in good faith, which is itself a conclusion drawn from probative facts and circumstances, there is little controversy. It is not enough to show that diligent inquiry by Hostetler would have disclosed that the plaintiffs were the owners of the property; the issue is: did the plaintiffs establish circumstances that would raise a duty to inquire?

We stated in *Daly v. Rizzutto*, 59 Wash. 62, 65, 109 Pac. 276, 29 L. R. A. (N.S.) 467 (1910), that

"It [notice] need not be actual, nor amount to full knowledge, but it should be such 'information, from whatever source derived, which would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry.' [Citing cases.] It follows, then, that it is not enough to say that diligent inquiry would have led to a discovery, but it must be shown that the purchaser *had, or should have had, knowledge of some fact* or circumstance which would raise a duty to inquire." (Italics ours.)

See also: *Dümmel v. Morse*, 36 Wn. (2d) 344, 218 P. (2d) 334 (1950); *Bernard v. Benson*, 58 Wash. 191, 196, 108 Pac. 439 (1910). In the latter case, the court said:

"What makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell."

Plaintiffs had the burden of proving actual or constructive notice of their interest (*Daly v. Rizzutto, supra*; *Biles-Coleman Lbr. Co. v. Lesamiz*, 49 Wn. (2d) 436, 302 P. (2d) 198 (1956)), and, if they failed to do so, their prior conveyance was void as against the defendants by virtue of RCW 65.08.070.

In considering whether the plaintiffs sustained that burden, we must remember, as the trial court found, "that the defendant, Wier Hostetler, was well and intimately acquainted with both the defendant, Berg S. Swendsen, and with Eugene A. Swendsen, during his lifetime." Hostetler knew that: (a) Eugene Swendsen had owned both tracts A and B; (b) Eugene Swendsen had died; (c) Berg Swendsen was his sole heir; and (d) Berg Swendsen had previously sold tract B.

Hostetler admitted that he knew Berg Swendsen had written to Yakima "to find out about or to clear the title to the property which is the subject matter of this suit." Plaintiff Paganelli admitted receiving a letter from Berg Swendsen "wondering what my [Paganelli's] buildings were doing on that property [tract A]," and when asked what he did with it, answered: "Nothing; threw it away." He was later

asked if he would have given a similar letter from Hostetler the same treatment, and he answered: "I probably would have."

A circumstance that should lead a person to inquire is only notice of what a reasonable inquiry would reveal. *Tjosevig v. Butler*, 180 Wash. 151, 159, 38 P. (2d) 1022 (1934); *Diimmel v. Morse, supra.*

Notice that Berg Swendsen was trying to clear title to tract A, followed by his making a sale to Hostetler, would justify Hostetler in concluding that he had succeeded in clearing title, particularly when backed up by a title insurance policy. In any event, Paganelli testified that an inquiry directed to him would probably not have given Hostetler any notice of plaintiffs' interest in the property. We find no basis for the trial court's conclusion that Hostetler had actual notice of plaintiffs' interest in the property.

Having concluded that Hostetler had no actual notice, we now examine the circumstances relied upon by the trial court in holding that Hostetler had constructive notice.

In the oral decision, the trial court stated that "the property was occupied, as I understand that term, I don't think the word 'occupied' means that it has to be occupied by a human being, the property was occupied by a building [a fruit stand] and by blacktop paving, which is notice to the world that somebody has an interest in that property."

If this reasoning was adopted, a purchaser could never rely upon record title when purchasing property with improvements. We have consistently held that a purchaser may rely upon record title. *Dunn v. Neu*, 179 Wash. 351, 361, 37 P. (2d) 883 (1934); *Cunningham v. Norwegian Lutheran Church of America*, 28 Wn. (2d) 953, 956, 184 P. (2d) 834 (1947); *Biles-Coleman Lbr. Co. v. Lesamiz, supra.*

Vacant buildings on land, with no other visible indication of possession, are insufficient notice to create a duty of inquiry. *Ballona v. Petex*, 234 Mich. 273, 207 N. W. 836 (1926); 1 Merrill on Notice 168, § 141. Hence, the unoccupied fruit stand did not constitute constructive notice, nor did the blacktop paving.

Other circumstances relied on by the trial court were of even less significance. The presence of certain trucks, two "For Sale" signs on tract A, and the fact that Hostetler knew Berg Swendsen did not operate through a real estate agency when he sold tract B were not inconsistent with Berg Swendsen's title and were not such circumstances as would put a reasonably prudent person on inquiry.

Hostetler testified that he never saw anyone in possession of the fruit stand in July, 1954. There was no showing that he did or should have visited the property during the three-week period that the property was used by a lessee of the plaintiffs. Even so, the lessee's possession would only be notice of his interest, and not necessarily of the plaintiffs' interest. *Ashton v. Buell,* 149 Wash. 494, 498, 271 Pac. 591 (1928).

There is no contention that Hostetler knew what the treasurer's records showed, as to the parties to whom tax statements were being mailed, and what he did not know could not put him on inquiry. If he were put on inquiry, the records of the auditor's office are certainly more conclusive on the issue of title than those of the treasurer's office. *Kroetch v. Hinnenkamp,* 171 Wash. 518, 18 P. (2d) 491 (1933).

In the absence of an allegation and proof of fraud, the relationship between Hostetler and Berg Swendsen cannot be relied upon as a circumstance to place Hostetler on inquiry. Indeed, the close relationship between the parties was a circumstance that would tend to excuse inquiry.

Neither, taken one at a time or cumulatively, can any circumstance relied on by the plaintiffs as constituting constructive notice be considered as indicating that Hostetler did not have a right to rely on the record title and the willingness of the title company, after its inquiry, to insure title in Berg Swendsen.

The plaintiffs are seeking equitable relief; yet, if they had recorded their deed, or, if plaintiff Paganelli had answered Berg Swendsen's letter, the defendants, Hostetler and Hughbanks, would not be in their present position. When applying the rule of comparative innocence, it is

impossible for us to escape the conclusion that the plaintiffs were negligent and should bear the loss.

We conclude that plaintiffs did not sustain their burden of proving that Hostetler had notice, actual or constructive, of their ownership of the property. We are satisfied that a preponderance of the evidence establishes that defendant Hostetler was a good-faith purchaser; and, by virtue of RCW 65.08.070, the plaintiffs' deed is void as against him.

Having concluded that Hostetler has title to the property, it follows that the mortgage to Hughbanks, executed by Hostetler, is a valid lien against the property.

The judgment quieting title to the property in the plaintiffs is reversed, and the trial court is directed to quiet title in defendant Hostetler as against any claims by the plaintiffs. Appellant Hughbanks is, of course, entitled to his costs, as well as the appellant Hostetler.

MALLERY, FINLEY, OTT, and FOSTER, JJ., concur.

[1]Reported in 311 P. (2d) 689.