### In re GUIL–PARK FARMS, INC., Debtor.

### Bankruptcy No. A–B–88–10286.

United States Bankruptcy Court,
W.D. North Carolina.

Aug. 31, 1988.

David G. Gray, Asheville, N.C., for debtor.

Albert L. Sneed, Jr., Asheville, N.C., for NCNB.

George W. Saenger, Asheville, N.C., for A&R Chef.

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND DENYING MOTION TO CONVERT

GEORGE R. HODGES, Bankruptcy Judge.

This matter is before the court on the motion of a secured creditor, NCNB National Bank of North Carolina ("NCNB") for relief from the automatic stay. 11 U.S.C. § 362(a). That motion is opposed by the debtor and an unsecured creditor, A & R Chef ("Chef"), who contend that NCNB is not a secured creditor. Chef has also filed a motion to convert this Chapter 11 case to one under Chapter 7. For the reasons that follow, the court has concluded that NCNB is a secured creditor, that it is entitled to relief from the automatic stay to proceed against its collateral and that the motion for conversion should be denied.

### Facts

The debtor was a corporation whose sole business was to serve as purchaser of food and other supplies which it sold on account to three related restaurants—each of which was a separate corporation. NCNB loaned money to the debtor and took a Note and Security Agreement secured by accounts receivable, including proceeds therefrom. The Security Agreement was properly perfected.

Unbeknownst to NCNB, the debtor exchanged the accounts receivable owing to it by the three restaurant corporations for promissory notes executed to it by those corporations. The notes were executed by an officer of those three corporations who was also the officer of the debtor who executed the NCNB Note, Security Agreement and Financing Statements. The debtor never advised NCNB of the exchange of accounts receivable for promissory notes. NCNB discovered the transaction from reviewing the schedules attached to the debtor's Chapter 11 petition after it had filed its bankruptcy case—at which time NCNB was subject to the automatic stay of § 362.

The current balance of the debtor's debt to NCNB is approximately $250,000.00. The promissory notes held by the debtor which represent the balance of accounts receivable from the restaurant corporations are in the total amount of approximately $129,000.00. The debtor has ceased operations, and its sole assets are these promissory notes.

### Discussion

█ NCNB contends that the promissory notes are "proceeds" and that its security interest attaches to them. Chef agrees that notes can be "proceeds," but asserts that NCNB has failed to perfect its security interest in them. The court has concluded that the notes are, in substance, the

accounts receivable that they replaced. Further, NCNB is entitled to relief from the automatic stay to take possession of the notes and pursue whatever other rights it has against the debtor.

The Uniform Commercial Code defines "proceeds: as follows:

(1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. . . .

N.C.Gen.Stat. § 25–9–306(1). Of course, a security interest in a promissory note can only be perfected by *possession* of the note. Section 25–9–304(1) provides that:

(1) A security interest in money or instruments can be perfected only by the secured party's taking possession ... subsections (2) and (3) of G.S. 25–9–306 on proceeds.

The grace period for perfection of a security interest in proceeds provides only a ten day period for taking possession of promissory notes:

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected *but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless*

\*    \*    \*    \*    \*    \*

(c) the security interest in the proceeds is perfected before the expiration of the 10–day period.

N.C.Gen.Stat.   § 25–9–306(3)   (Emphasis added).   The only person involved in the transaction here—the debtor's and restaurants' officer—did not disclose the transaction.\*   NCNB did not act timely to take possession of the promissory notes because it did not know the exchange had occurred. Consequently, pursuant to the literal language of § 25–9–306(3), NCNB became unperfected in the promissory notes upon expiration of the ten day grace period.

But, such a result is not contemplated by the Uniform Commercial Code, nor will it be countenanced by the court. To do so in these circumstances would create the op-portunity for the debtor unilaterally and surreptitiously to strip its secured creditors of their security by a purely formal act. Such a result is clearly unfair—especially since the creditor is powerless to protect against it.

On the facts of this case, the court finds and concludes that the *substance* of the debts originally in the form of accounts receivable has not changed and that NCNB remains perfected in the accounts receivable, even though they presently exist in the form of promissory notes.  Here, the transaction which transformed the accounts receivable into the form of notes was executed by related—if not identical—parties. In fact, both the note and security documents executed by the debtor for NCNB and the restaurant's promissory notes were executed by the same person—albeit in the capacity of officer of different corporations.  The *substance* of the transaction is that the debtor owes a debt to NCNB which was secured by assigning NCNB a security interest in debts owed to it by other entities.  The form of those debts was contemplated to be accounts receivable, and that was originally the case.  The debtor changed the form of those debts to promissory notes unilaterally and without notice to NCNB—but those notes represent only what was originally in the form of accounts receivable.  The court finds that the change in the form of the debt in these circumstances *does not affect* NCNB's security interest in the debts; that the substance of the debt remains accounts receivable (although now existing in the form of notes); and that NCNB has a perfected security interest.  Because of the court's finding that the notes are in substance accounts receivable, those debts are immediately due.

■   The debtor has ceased operations and the accounts receivable/promissory notes represent the only asset of this estate.  They are in the total amount of approximately $129,000.00.  The debtor's indebtedness to NCNB is approximately $250,000.00.  Consequently, the court con-

\* There is no evidence that would support the   finding of a fradulent transfer.

cludes that NCNB is entitled to relief from the automatic stay to enforce its security interest in the accounts receivable/promissory notes.

Because of the result reached here, the court concludes that the motion for conversion to a Chapter 7 case should be denied. Counsel for the debtor-in-possession has announced his intention to dismiss the Chapter 11 case. That will be allowed by separate Order.

It is therefore ORDERED that:

1. NCNB has a perfected security interest in accounts receivable owing the debtor which presently exist in the form of promissory notes;

2. The debtor is directed to deliver the promissory notes in its possession to NCNB forthwith;

3. NCNB is relieved from the automatic stay in order to enforce its rights against the accounts receivable/promissory notes; and

4. The motion of A & R Chef, Inc., to convert this case to one under Chapter 7 of the Bankruptcy Code is denied.