912 F.2d 1125
 Bankr. L. Rep. P 73,608, 12 UCC Rep.Serv.2d 557
In re SEAWAY EXPRESS CORP., Debtor.
NATIONAL BANK OF ALASKA, N.A., Appellant,
v.
Warren L. ERICKSON, Trustee for Seaway Express Corporation, Appellee.
 No. 89-35872.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1990.
Decided Aug. 30, 1990.
 
 Kimberly W. Osenbaugh, Bogle & Gates, Seattle, Wash., for appellant.
 Eugene J. Craig, Seattle, Wash., for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before WRIGHT, BEEZER and TROTT, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 The National Bank of Alaska (NBA) appeals a decision of the Bankruptcy Appellate Panel (BAP), granting summary judgment to Erickson, trustee in the bankruptcy of Seaway Express Corp. (Seaway). NBA claims a priority interest in property owned by Seaway. The BAP rejected NBA's claim. We affirm.
 
 
 2
 * During 1985-86, NBA provided a line of credit to Seaway secured by a credit agreement. Under the agreement, Seaway's credit line was set as a percentage of its inventory and "eligible" accounts receivable (accounts less than 90 days old). NBA eventually loaned Seaway over $9 million, of which at least $6 million remains owing. In exchange, Seaway granted NBA a security interest in all its inventory and accounts receivable, including any "proceeds" from the sale of either (outside the normal course of business). Seaway promised not to dispose of any of its secured assets without NBA's permission.
 
 
 3
 This dispute concerns an account receivable owed to Seaway by Anchorage Fairbanks Freight Service, Inc. (AFFS). By the end of 1985, AFFS owed Seaway in excess of $1 million. The account was over 90 days old and Seaway commenced legal action to collect it. In settlement, Seaway "sold" the account back to AFFS in exchange for a parcel of real property located in Auburn, Washington (the Auburn property). NBA was aware of the proposed settlement, but did not consent or object. After the transfer had been completed, NBA asked Seaway to record a deed of trust on the property in its favor. Seaway refused.
 
 
 4
 In February, 1986, Seaway declared bankruptcy under Chapter 11. It sold the Auburn property for approximately $1 million. The funds were placed in a segregated account. Seaway's bankruptcy was subsequently converted to Chapter 7, and Erickson was appointed the bankruptcy trustee.
 
 
 5
 NBA now claims it has a priority interest in the proceeds of the sale of the Auburn property under two theories. First, NBA claims it has a perfected security interest in the Auburn property, as "proceeds" from the sale of the AFFS account. In the alternative, NBA claims it has an equitable interest in the property, entitling it to a constructive trust and removing the property from the estate. The Bankruptcy Court rejected both theories. The BAP affirmed. 105 B.R. 28 (9th Cir. BAP 1989).
 
 
 6
 We have jurisdiction over this timely appeal under 28 U.S.C. Sec. 158(d). We review conclusions of law of the BAP de novo. In re Tleel, 876 F.2d 769, 769 (9th Cir.1989).
 
 II
 
 7
 A. NBA first argues that it had a perfected security interest in the Auburn property. We disagree.
 
 
 8
 Under its credit agreement with Seaway, NBA did have a perfected security interest in the AFFS account. Under the terms of the agreement and under the UCC, this interest continued in the "proceeds" of any unauthorized sale of the account. See Wash.Rev.Code Sec. 62A.9-306(2); Southwest Wash. Production Credit Ass'n v. Seattle-First Nat'l Bank, 92 Wash.2d 30, 33, 593 P.2d 167, 169 (1979) (en banc). NBA need only perfect its interest in the proceeds within ten days of the sale. Wash.Rev.Code Sec. 62A.9-306(3). When perfection is impossible due to the actions of the debtor, such an interest may be deemed perfected. In re Guil-Park Farms, Inc., 90 B.R. 180 (Bankr.W.D.N.C.1988); In re Littlejohn, 519 F.2d 356, 359 (10th Cir.1975).
 
 
 9
 NBA argues that under these principles, its interest in the Auburn property should be deemed perfected. It contends that the sale of the AFFS account was not authorized and that it attempted to perfect its interest in the Auburn property but was prevented by Seaway. We reject NBA's argument.
 
 
 10
 NBA concedes that by its terms the UCC does not extend to real property. See Wash.Rev.Code Sec. 62A.9-104(j). NBA cites no case in which a perfected interest in UCC-covered goods has been extended to real property. Good reasons exist not to do so here. To "perfect" an interest in real property under Washington law, a party must record a deed signed by the grantor. Wash.Rev.Code Secs. 64.04.010-.020. An unrecorded interest in property is not binding on a subsequent purchaser in good faith. Wash.Rev.Code Sec. 65.08.070; Paganelli v. Swendsen, 50 Wash.2d 304, 311 P.2d 676 (1957). Such recording statutes are central to real property law. In re Great Plains Western Ranch Co., 38 B.R. 899, 905 (Bankr.C.D.Cal.1984).
 
 
 11
 We agree with the BAP that NBA's perfected security interest in the AFFS account did not extend to the Auburn property. B. NBA next argues that it has an equitable interest in the Auburn property because Seaway's acquisition of the property was wrongful. The parties do not dispute that Seaway may have violated the terms of the credit agreement and could be liable for breach of contract. Under Washington state law, a constructive trust may be imposed as a remedy for a breach of contract. Humphries v. Riveland, 67 Wash.2d 376, 407 P.2d 967, 974 (1965) (en banc); In re Thornton, 14 Wash.App. 397, 541 P.2d 1243, 1246 (1975). NBA argues that because its potential constructive trust would arise as of the time of Seaway's wrongful act, the Auburn property never became "property of the estate." We disagree.
 
 
 12
 Under the Bankruptcy Code, 11 U.S.C. Sec. 541(d),[1] equitable interests held by others are excluded from "property of the estate." NBA argues that the trustee's avoidance powers are limited by that section. The trustee may avoid transfers by the debtor only to the extent the debtor transferred "property of the estate." See 11 U.S.C. Secs. 544(a), 547(b), 551. Since "property of the estate" is defined in part by Sec. 541(d), NBA argues, that section limits the trustee's powers. See Begier v. IRS, --- U.S. ----, 110 S.Ct. 2258, 2262-63, 110 L.Ed.2d 46 (1990) (tax funds held in trust not property of the estate).[2] However, Sec. 541(d) was amended in 1984 to reach only property brought into the estate by the debtor under Secs. 541(a)(1) and (2). It no longer affects property brought into the estate by the trustee's avoidance powers under Secs. 541(a)(3)-(7).
 
 
 13
 In addition, Congress granted the bankruptcy trustee enhanced powers over real property owned by the debtor at the commencement of the case and not transferred. Under 11 U.S.C. Sec. 544(a)(3),[3] the trustee is granted, in addition to the avoidance powers, "the rights and powers of ... a bona fide purchaser of real property ... from the debtor." The powers of a bona fide purchaser of real property are defined by state law. Tleel, 876 F.2d at 772. Under Washington state law, a bona fide purchaser who buys without notice cuts off a potential constructive trust. Huber v. Coast Investment Co., 30 Wash.App. 804, 810, 638 P.2d 609, 612 (1981); Viewcrest Cooperative Ass'n v. Deer, 70 Wash.2d 290, 292, 422 P.2d 832, 834 (1966). See Restatement Restitution Secs. 160, comment g; 172. Similarly, a bona fide purchaser prevails over a prior unrecorded conveyance. In re Washburn & Roberts, Inc., 795 F.2d 870, 872 (9th Cir.1986); Paganelli v. Swendson, 50 Wash.2d 304, 311 P.2d 676, 679-80 (1957).
 
 
 14
 Faced with this apparent conflict, courts have split over whether Sec. 541(d) or Sec. 544(a)(3) should prevail. See Annot., Power of Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust under Section 544(a) of Bankruptcy Code, 96 A.L.R.Fed. 100, 104-05 (1989). Some courts have held that Sec. 541(d) prevails, particularly in the case of personal property. Id. at Sec. 3. But the majority rule is that Sec. 541(d) does not limit the trustee's powers over real property under Sec. 544(a)(3). Id. at Secs. 5, 6. See In re General Coffee, 828 F.2d 699, 705 (11th Cir.1987) (collecting cases and calling majority rule an "inescapable conclusion" though drafters of Code did not anticipate this conflict). Compare In re Quality Holstein Leasing, 752 F.2d 1009, 1013 (5th Cir.1985) (minority rule); with Belisle v. Plunkett, 877 F.2d 512, 516 (7th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); In re Cascade Oil Co., 65 B.R. 35, 39, 41 (Bankr.D.Kan.1986); Great Plains, 38 B.R. at 905; and In re Anderson, 30 B.R. 995, 1009-10 (D.Tenn.1983) (majority rule). Moreover, Sec. 541(d) was specifically designed to address the secondary mortgage market, a situation that does not apply here. Tleel, 876 F.2d at 774 n. 8.
 
 
 15
 We follow the majority rule. When a creditor claims an inchoate equitable interest in real property owned by the debtor at the commencement of the case, which interest is not evidenced by a recorded instrument and not yet granted by a state court, the trustee as bona fide purchaser prevails. Tleel, 876 F.2d at 774 (citing with approval Cascade Oil, Great Plains, and other decisions representing the majority rule). Constructive notice is sufficient to preserve a creditor's interest against the trustee. See In re Probasco, 839 F.2d 1352, 1354 (9th Cir.1988). But "[e]ven if it is assumed that [the] interest could qualify for a constructive trust," if the trustee "had no actual or constructive notice of [the] alleged interest under [state] law," the trustee takes free of that interest. Tleel, 876 F.2d at 771-72. In Tleel, we observed that
 
 
 16
 We are not dealing with property that a state court decree has in the past placed under a constructive trust. We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws.
 
 
 17
 Id. at 771 (quoting In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th Cir.1985), cert. denied sub nom. Torres v. Eastlick, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986)). "A fair reading of the statutes in this context mandates ... that section 544(a)(3) prevail in this and similar instances. [An] asserted constructive trust clearly represents the kind of inchoate claim that section 544(a)(3) was designed to cut off." Tleel, 876 F.2d at 773.
 
 
 18
 NBA does not argue that Erickson had either actual or constructive notice here. NBA attempts instead to distinguish Tleel in several respects. First, it argues that in Tleel, the claimant had participated in the transaction but failed to protect himself. But here, NBA was aware of Seaway's transaction and also could have but failed to protect itself. NBA could have filed a complaint in state court seeking appointment of a commissioner to file the deed of trust on its behalf. Wash.Rev.Code Sec. 6.28.010. Filing the complaint would have entitled NBA to record a lis pendens that would have provided constructive notice to subsequent purchasers and preserved its claim against Erickson. Wash.Rev.Code Sec. 4.28.320. See In re Gurs, 27 B.R. 163 (9th Cir. BAP 1983). NBA responds only that this would have required litigation, to which it need not resort, citing In re Bruce Farley Corp., 612 F.2d 1197, 1201 (9th Cir.1980). There, we held that we would not require a party to resort to litigation to gain physical possession of a promissory note. However, we explicitly recognized that litigation might be a valid requirement in other contexts. Id. at 1200. Real property interests create such a context.
 
 
 19
 Similarly, NBA argues that its equitable interest should be recognized because it did everything it could to perfect its interest. Section 544(a)(3) provides that the trustee is in the position of a bona fide purchaser only if the debtor is one "against whom applicable law permits such transfer to be perfected." The legislative history shows that Congress intended that "the bona fide purchaser test" should "not ... require a creditor to perform the impossible in order to perfect his interest." 124 Cong.Rec. 32400 (statement of Sen. Edwards). NBA argues, in effect, that expecting it to resort to litigation to protect its interests is to "require [it] to perform the impossible." Again, NBA cites Farley, 612 F.2d at 1201.
 
 
 20
 We reject NBA's argument. The full legislative history and the plain language of the statute make it clear that the Code does "not require a transferee to perfect a transfer against an entity with respect to which applicable law does not permit perfection." 124 Cong.Rec. at 32400 (emphasis added). Here, the law of the State of Washington not only permits perfection of an interest such as NBA's, it provides clear procedures for attaining that goal in the face of an uncooperative party such as Seaway.
 
 
 21
 Next, NBA suggests that Sec. 544(a)(3) applies only when a trustee avoids a transfer and no transfer has occurred here. Although the section empowers the trustee to avoid transfers, by its terms it also applies if no transfer has taken place. If no transfer has occurred, there is none to be avoided. Belisle, 877 F.2d at 515.
 
 
 22
 NBA also suggests that in the interests of fairness a constructive trust should be imposed. NBA directs us to numerous cases where constructive trusts have been imposed on personal property. See, e.g., In re Howard's Appliance Corp., 874 F.2d 88, 94 (2d Cir.1989) (air conditioners); In re Atlantic Mortgage Corp., 69 B.R. 321, 329 (Bankr.E.D.Mich.1987) (promissory notes, citing Farley ). It then argues that the same logic should apply to real property, but cites no case in which such a trust has been imposed.
 
 
 23
 Personal property cases do not support NBA's argument. Section 544(a)(3) grants the trustee power over real property that it does not grant over personal property. See In re Marino, 813 F.2d 1562, 1565-66 (9th Cir.1987); Great Plains, 38 B.R. at 905. Moreover, even courts granting constructive trusts have cautioned against application of the doctrine in bankruptcy cases because it amounts to giving a priority to an otherwise unsecured creditor. See Atlantic Mortgage, 69 B.R. at 329.
 
 
 24
 Finally, NBA argues that in Tleel, we intended to limit that case to its facts. We explicitly stated, however, that Sec. 544(a)(3) should "prevail in this and similar instances." 876 F.2d at 773. NBA's position is remarkably similar to the situation we examined there.
 
 III
 
 25
 We find this case indistinguishable from Tleel. NBA took no steps to provide actual or constructive notice to subsequent bona fide purchasers such as Erickson. Since Erickson had no actual or constructive notice of NBA's claimed interest, the property remains part of Seaway's estate. Such a result is consistent with our long-standing recognition of the policy behind bankruptcy law, which supports ratable distribution of the estate. See In re Lewis W. Shurtleff, Inc., 778 F.2d 1416, 1419 (9th Cir.1985).
 
 The BAP's grant of summary judgment is
 
 26
 AFFIRMED.
 
 
 
 [1]
 Section 541(d) reads:
 Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 
 
 [2]
 NBA also urges us to hold that Begier v. IRS, --- U.S. ----, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), determines the outcome of the case before us. Begier construed the version of Sec. 541(d) in effect before the 1984 amendments. See Id. 110 S.Ct. at 2263. In addition, it did not concern real property or Sec. 544(a)(3). We do not find it controlling here
 
 
 [3]
 Section 544(a)(3) reads:
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.