# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALAN F. GERVAIS, a single man, | No. 47852-8-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| BRAD L. MIEDERHOFF, a single man, and WELLS FARGO BANK, N.A., | |
| Respondents. | |

BJORGEN, C.J. — Alan Gervais appeals the adverse portions of the judgment in his action

to declare an easement for ingress and egress across a neighboring property owned by Brad

Miederhoff, as well as the trial court's denial of his motion for reconsideration. He argues that

the trial court erred by (1) failing to make necessary findings of fact, (2) concluding that

Miederhoff did not have inquiry notice of an unrecorded easement, (3) concluding that Gervais

had impliedly reserved no easement by prior use when he created the neighboring lot by short

plat, and (4) denying Gervais' motion for reconsideration. We hold that (1) the trial court made

findings of fact sufficient to support its conclusions of law, (2) the trial court's conclusion of law

that Miederhoff did not have inquiry notice was legally sound, (3) the trial court's conclusion of

law that Gervais did not reserve an easement by prior use was also legally sound, and (4) the trial court did not err in denying the motion for reconsideration. Accordingly, we affirm the judgment and denial of the motion for reconsideration.

FACTS

Gervais owned a tract of land in Clark County, which he divided into four lots through a short plat in 1992. The short plat document describes an express easement for access to lots 1 and 2, but no similar easement for lots 3 and 4. However, the short plat shows that lots 3 and 4 have a shared corner. Access to lot 4 was through a driveway road that passed through lot 3, but the short plat did not describe this arrangement.

Gervais quickly sold lots 1 and 2 but maintained ownership of lots 3 and 4. In 1996, Gervais deeded lot 3 to his daughter. In 2004, Gervais' daughter sold the property to Grant Rosenlund. That same year, Gervais and Rosenlund entered into a written easement for use of the driveway across lot 3 for ingress to and egress from lot 4. In 2009, Rosenlund sold lot 3 to Miederhoff. However, the 2004 written easement was not recorded until 2010. During this time, the driveway through lot 3 onto lot 4 was at most infrequently used by Gervais, mainly for maintenance work on lot 4.

As part of the sale to Miederhoff, Rosenlund provided a seller's disclosure form, which stated "yes" in response to the question, "Is there a private road or easement agreement for access *to* the property?" Ex. 43 (emphasis added). He stated "no" on the same form in response to other questions asking if there were any easements on the property or joint maintenance agreements. Ex. 43. During the sale, Miederhoff also saw a copy of the short plat showing the shared boundary and lack of express easement.

2

Gervais brought this action seeking a ruling that he had an easement permitting access to lot 4 through lot 3 based on the express easement or an easement implied by prior use. Following trial, the trial court delivered an oral ruling in favor of Miederhoff on April 10, 2015. The court entered its judgment on June 26, and Gervais filed a motion to reconsider the same day. The trial court filed its written findings of fact and conclusions of law on June 29.

In its written findings and conclusions, the trial court found that the express easement did not provide Miederhoff with record notice because it was not recorded at the time of the sale and, as such, Miederhoff was a good faith purchaser without notice of the easement. The trial court also concluded that there was no inquiry notice from Gervais' occasional maintenance, no implied easement from prior use, no prescriptive easement, and no easement by necessity. However, the trial court did conclude that an easement existed for the use of utility lines across lot 3.

Gervais' motion for reconsideration was based in part on an estimate of the cost of constructing a new access roadway for lot 4 that did not cross lot 3. Gervais had requested this estimate from AKS Engineering after trial. AKS calculated the cost of construction to be at least $1,050,000, much greater than the approximately $30,000 estimate presented at trial. Gervais provided no reason why the greater estimate could not have been obtained before the start of the trial. Gervais also challenged the trial court's adverse conclusions of law on legal grounds. The trial court denied Gervais' motion for reconsideration.

Gervais appeals both the judgment and the denial of his motion for reconsideration, challenging several conclusions of law.

ANALYSIS

Gervais assigns error to the trial court's (1) judgment, specifically challenging conclusions 1, 2, and 5, and (2) denial of his motion for reconsideration. The challenged conclusions state:

1.      The Short Plat, Rosenlund/Miederhoff Seller's Disclosure Statement and Rosenlund/Gervais Driveway Easement did not provide record notice of Gervais' use of the driveway on Lot 3 to access Lot 4 prior to Miederhoff's purchase of Lot 3 in order to create an express easement.

2.      Gervais' use of the driveway on Lot 3 to access Lot 4 to do occasional maintenance prior to Miederhoff's purchase did not provide constructive or inquiry notice to Miederhoff to create an implied easement.

. . . .

5.      Gervais established that creation of a driveway on Lot 4 from Spurrel Road may be more expensive than use of the existing driveway on Lot 3, but it is feasible. Therefore, Gervais' [sic] did not establish an easement by necessity.

Clerk's Papers (CP) at 41-44. We hold that the trial court did not err.

I. JUDGMENT

In reviewing a trial court's judgment, we determine whether substantial evidence in the record supports the findings of fact and whether those findings support the conclusions of law. *City of Tacoma v. State*, 117 Wn.2d 348, 361, 816 P.2d 7 (1991). Substantial evidence is defined "as a quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true." *Stieneke v. Russi*, 145 Wn. App. 544, 566, 190 P.3d 60, 71 (2008). Conclusions of law are reviewed de novo. *Id*.

A.    Failure to Make Necessary Findings of Fact

Gervais contends that the trial court's conclusion of law that no easement existed was not adequately supported because the court did not make findings of fact concerning (1) the location, configuration, and visibility of the road, (2) Miederhoff's receipt and review of the preliminary commitment for title insurance and associated documents, and (3) the seller's disclosure form. Gervais argues that these findings are critical to determining whether he has an easement over Miederhoff's lot. We disagree and hold that the trial court made all findings of fact necessary to support its conclusions of law.

Findings of fact need not be made concerning every contention made by parties to a case; however, findings must be made as to all material issues. *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 707, 592 P.2d 631 (1979). The trial court must make findings sufficient to inform us "what questions the trial court decided and the manner in which it did so." *Tacoma v. Fiberchem, Inc.*, 44 Wn. App. 538, 541, 722 P.2d 1357 (1986). On appeal, we may look to oral findings of fact to interpret the written findings of fact if necessary. *State v. Hescock*, 98 Wn. App. 600, 606, 989 P.2d 1251 (1999).

1. Location, Configuration, and Visibility of the Roadway

Gervais argues that the trial court erred in not making findings regarding the location, configuration, and visibility of the roadway. However, no such facts were necessary to support the trial court's conclusions of law. The only conclusions that refer to the driveway at all refer to Gervais' *use* of it. The particular features of the driveway are immaterial to the trial court's conclusions, as discussed in greater detail below. Moreover, the existence and rough configuration of the roadway are evident in the trial court's finding of fact 6, mixed finding of

fact and conclusion of law 10, and the court's oral ruling.[1]  We hold that the trial court did not err

by making no express findings as to the location, configuration, or visibility of the roadway.

2.  Preliminary Commitment for Title Insurance

Gervais contends that the trial court erred in not making a finding of fact about

Miederhoff's receipt of the preliminary commitment for title insurance, which disclosed the

existence and contained a copy of the short plat.  We disagree that such a finding was necessary

to support the trial court's conclusion of law.

The trial court concluded only that the short plat did not provide record notice of Gervais'

use of the driveway for the purpose of creating an express easement.  Findings of fact 1 through

4 clearly describe the short plat, providing adequate support for that conclusion of law.[2]  Finding

---

[1] Although characterized by the trial court as a finding of fact, we interpret finding of fact 10 as a mixed finding of fact and conclusion of law.  The finding states, "Gervais' access through Lot 3 to do occasional maintenance on Lot 4 up to 2010 did not create an apparent, hostile, or continuous use of the driveway on Lot 3."  CP at 43.  This finding is consistent with the trial court's oral ruling that:  "The character of ownership throughout the years did not allow a period of 10 years of apparent hostile use for a driveway servicing Lot 4 across Lot 3.  While the road is apparent, the evidence does not suggest that its use was apparent."  Report of Proceedings (RP) (Apr. 10, 2015) at 7.

[2] Findings of fact 1 through 4 state:
1.   On February 18, 1992, Gervais created a short plat for Lots 1, 2, 3 & 4 in Woodland, Clark County, Washington ("Short Plat"). Gervais originally owned all four (4) lots.
2.   The Short Plat contemplated two (2) access points off of Spurrel Road for Lots 1, 2, 3, & 4.
3.   The Short Plat contained a specific easement with dimensions for Lot 1 from Spurrel Road through Lot 2.
4.   The access point for Lot 3 and Lot 4 was shown as the shared boundary corner on the south off Spurrel Road. The Short Plat did not contain an easement over Lot 3 for the benefit of Lot 4, as was created for Lot 1 and Lot 2 on the Short Plat.
CP at 42-43.

4, in fact, expressly found that the short plat did not contain an easement over lot 3 for the benefit of lot 4. Because the short plat did not provide evidence of the unrecorded easement, it is immaterial whether Miederhoff in fact received any disclosure that the short plat existed through the preliminary commitment for title insurance. We hold that the trial court did not err in failing to make a finding about Miederhoff's receipt of the preliminary commitment.

### 3. Seller's Disclosure Form

Gervais contends that the trial court erred in not making sufficient findings of fact concerning the seller's disclosure statement because the court made no specific findings about the Rosenlunds' responses to the questions on the form. We disagree that any such finding was necessary to support the trial court's conclusions.

As with the short plat, the trial court concluded only that the disclosure form did not provide record notice of Gervais' "use of the driveway . . . in order to create an express easement." CP at 43. Finding 5 accurately describes the actual content of the form, which is the only fact necessary for the court to determine that the form facially provided no notice of the easement. There was no need for the court to quote the Rosenlunds' specific responses to the questions on the form or make findings as to the Rosenlunds' reasons for filling out the form because the only issue was whether the form provided notice to Miederhoff. By describing the content of the disclosure form in a manner supported by the available evidence, the trial court adequately supported the relevant conclusion of law. Accordingly, we hold that the trial court did not err in failing to make a finding about the Rosenlunds' specific responses and reasons for their responses on the seller's disclosure statement.

B.     Express Easement—Inquiry Notice

Gervais argues that the trial court erred in concluding that Miederhoff was not on notice

of the unrecorded express easement.  We disagree that the trial court erred.

A bona fide purchaser of real property takes that property unencumbered by previously

conveyed, unrecorded easements.  *Ellingsen v. Franklin County*, 117 Wn.2d 24, 28, 810 P.2d

910 (1991).  Under Washington's race-notice recording statute,

> [a] conveyance of real property, when acknowledged by the person executing the
> same (the acknowledgment being certified as required by law), may be recorded in
> the office of the recording officer of the county where the property is situated.
> Every such conveyance not so recorded is void as against any subsequent purchaser
> or mortgagee in good faith and for a valuable consideration from the same vendor,
> his or her heirs or devisees, of the same real property or any portion thereof whose
> conveyance is first duly recorded.

RCW 65.08.070.  This statute incorporates the bona fide purchaser doctrine, providing

that conveyances are void against one who has in good faith paid valuable consideration

for the property without notice of any unrecorded conveyances or encumbrances thereof,

and has recorded his interest.  *OneWest Bank, FSB v. Erickson*, 185 Wn.2d 43, 65, 367

P.3d 1063 (2016).

The minimum notice necessary to defeat a buyer's claim of bona fide purchase is

inquiry notice, defined as "such information as would excite apprehension in an ordinary

mind and prompt a person of average prudence to make inquiry," *Glaser v. Holdorf*, 56

Wn.2d 204, 209, 352 P.2d 212 (1960), or "a visible state of things as is inconsistent with

a perfect right in him who proposes to sell," *Paganelli v. Swendsen*, 50 Wn.2d 304, 308,

311 P.2d 676 (1957) (citation omitted).  Our Supreme Court has elaborated on this

requirement:

> [Notice] need not be actual, nor amount to full knowledge, but it should be such "information from whatever source derived, which would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry." [(Quoting] *Bryant v. Booze*, 55 Ga. 438 [(1875))]. It follows, then, that it is not enough to say that diligent inquiry would have led to a discovery, but it must be shown that the purchaser had, or should have had, knowledge of some fact or circumstance which would raise a duty to inquire. . . . "There must appear to be, in the nature of the case, such a connection between the facts discovered and the further facts to be discovered, that the former may be said to furnish a clue—a reasonable and natural clue—to the latter." [(Quoting] *Birdsall v. Russell*, 29 N.Y. 220, 250 [(1864))].

*Daly v. Rizzutto*, 59 Wash. 62, 65, 109 P. 276 (1910).

Gervais describes three "obvious clues" that he believes should have given Miederhoff inquiry notice of the express easement: (1) the existence of the roadway; (2) the short plat; and (3) the seller's disclosure statement. Br. of Appellant at 21.

Gervais claims that the presence of a road to lot 4 across lot 3 should be sufficient to impart inquiry notice. However, even if the trial court had clearly found that a roadway existed between lots 3 and 4, the mere presence of a road would not necessarily have conferred inquiry notice of a full access easement over lot 3 serving lot 4. In two cases from the early 20th century dealing with notice of an easement, our Supreme Court focused on evidence of frequent use and clear purpose, such as a garage on the grantee's property that faced the grantor's property. *Kalinowski v Jacobowski*, 52 Wash. 359, 366, 100 P. 852 (1909) (discussing inquiry notice of a nonrecorded easement); *Oliver v. McEachran*, 149 Wash. 433, 436, 271 P. 93 (1928) (discussing how road surface indicated general usage of easement). Thus, we must focus on whether the presence and use of the road across lot 3 gave Miederhoff inquiry notice of an easement providing full rights of access to lot 4.

9

We conclude it did not. The developed portion of the road across lot 3 consists of gravel, which is rapidly replaced by undergrowth and brush after it passes the paved driveway on lot 3. Further up the path, some marks reminiscent of tire tracks are visible, but the ground is littered with unkempt brush and in some places tree branches have fallen, blocking immediate vehicle access. At trial, Miederhoff testified that the road looked like "an abandoned logging road" due to the "[heavy] brush growing in the road and other vegetation," which was "waist high and above." RP (Jan. 21, 2015) at 206-07. Miederhoff further testified that when Gervais' workers attempted to access the road in 2009, the workers were unable to drive on the road to gain access to lot 4 on account of the heavy brush along the road, which had to be cleared using a backhoe. Furthermore, the trial court found that Gervais' access through lot 3 for occasional maintenance on lot 4 was not sufficient to create an apparent use of the road across lot 3. Therefore, neither the condition of the road nor Gervais' use of the road gave Miederhoff inquiry notice of an easement across lot 3 for full access rights to lot 4.

Gervais claims that the seller's disclosure form provided notice of an easement because it stated that there was no easement that would affect Miederhoff's use of the property and that an easement existed for the benefit of lot 3. The trial court's conclusion of law that this disclosure did not provide adequate inquiry notice is supported by finding 5, which stated that the disclosure described an access for the benefit of lot 3 rather than lot 4. This finding is supported by the plain meaning of the seller's disclosure form, which stated that there was a road or easement "for access *to* the property." Ex. 43 (emphasis added). Given the plain meaning of the document, it was reasonable for the trial court to conclude that a prudent person would not have been prompted to inquire as to whether this actually referred to an easement for access to lot 4

10

*across* lot 3. Accordingly, we disagree with Gervais that the disclosure form put Miederhoff on inquiry notice.

Finally, Gervais argues that the short plat provided Miederhoff with notice because it referred to lots 3 and 4 having joint access at a corner that was near the roadway. The trial court found that the short plat included an express easement for lots 1 and 2, but "did not contain an easement over Lot 3 for the benefit of Lot 4, as was created for Lot 1 and Lot 2." CP at 42-43. In addition, the court mentioned the uncertainty about the boundary which could have reasonably permitted Miederhoff to think the road was along the shared corner. These findings are supported by a plain reading of the short plat and testimony presented at trial. Given the lack of an express easement on the short plat and the uncertainty of the relation between the driveway and the shared corner of lots 3 and 4, we hold that the short plat did not give Miederhoff inquiry notice of the unrecorded easement.

Even considered cumulatively, the three clues were not enough to prompt a prudent buyer to inquire as to the existence of an unrecorded access easement for lot 4. Accordingly, we hold that the trial court did not err in concluding that Miederhoff had no inquiry notice of the unrecorded easement. Therefore, Miederhoff was a bona fide purchaser who took lot 3 free of the unrecorded easement.

C.      Easement Implied by Prior Use

Gervais also contends that the trial court's findings do not support the conclusion of law that there was no easement implied by prior use of the roadway. We hold that the trial court's findings adequately support its conclusions of law.

Washington courts generally will find an easement implied by prior use if three factors are satisfied: (1) unity of title and subsequent separation, (2) apparent and continuous use during the period of unity of title, and (3) reasonable necessity of continued use after severance. *Williams Place, LLC v. State ex rel. Dep't of Transp.*, 187 Wn. App. 67, 96, 348 P.3d 797, *review denied*, 184 Wn.2d 1005 (2015). The first factor is required, while the second and third factors are treated as "aids to determining the presumed intent of the parties as disclosed by the extent and character of the use, the nature of the property, and the relation of the separated parts to each other." *McPhaden v. Scott*, 95 Wn. App. 431, 437, 975 P.2d 1033 (1999). Satisfaction of the first factor is undisputed, but the trial court found that neither the second nor third factor indicated that the parties intended to create an easement.

1. Apparent and Continuous Use

The second element for an implied easement examines whether it is apparent and under continuous use during the unity of title. *Adams v. Cullen*, 44 Wn.2d 502, 505, 268 P.2d 451 (1954). Use of an easement is generally apparent "when the claimed easement is for something visible on the surface of the earth, such as a driveway or roadway," and the usage itself is similarly visible. WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASH. PRACTICE, REAL ESTATE: PROPERTY LAW § 2.4 (2d ed. 2016). Continuous use need not be constant, but must be uninterrupted and "'of the same character that a true owner might make of the property considering its nature and location.'" *Lee v. Lozier*, 88 Wn. App. 176, 185, 945 P.2d 214 (1997) (quoting *Double L. Props., Inc. v. Crandall*, 51 Wn. App. 149, 158, 751 P.2d 1208 (1988)); *accord 810 Props. v. Jump*, 141 Wn. App. 688, 702, 170 P.3d 1209 (2007).

The trial court found that Gervais accessed lot 4 through the roadway across lot 3 to do "occasional maintenance," which it concluded was insufficient to establish apparent or continuous use. CP at 42-43. The available evidence supported the finding of fact that Gervais used the road occasionally. The trial court explained orally that "either Mr. Gervais or someone on their behalf, might drive up the roadway once or twice a year." RP (Apr. 10, 2015) at 8. In addition, while the road itself was apparent, the court noted that Gervais' use was not necessarily apparent, comparing it to long-unused, overgrown trails. In light of the evidence and findings, the second element, whether the use was apparent and continuous, supports the trial court's conclusion of law of no implied easement.

2. Reasonable Necessity

The third factor for an implied easement examines whether it is reasonably necessary for the access to exist. *Haven v. Bays*, 55 Wn. App. 324, 327, 777 P.2d 562 (1989). Strict necessity need not be shown; rather, "'[t]he test of necessity is whether the party claiming the right can, at a reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute.'" *McPhaden*, 95 Wn. App. at 439 (quoting *Berlin v. Robbins*, 180 Wash. 176, 189, 38 P.2d 1047 (1934)). This requires that it would be impossible, or only possible at "great cost," for the property to be used and enjoyed without access through the claimed easement. *Adams*, 44 Wn.2d at 510.

In recent cases we have required a showing of very significant obstacles to satisfy the reasonable necessity requirement. In *Woodward v. Lopez*, 174 Wn. App. 460, 472, 300 P.3d 417 (2013), the only available alternative to an easement across neighboring land for ingress and egress was a route through wetlands, which would cost approximately $200,000 to construct and

would involve regulatory complexities. *See also Haven*, 55 Wn. App. at 329 (finding reasonable

necessity where the alternative route required a permit which had been denied). In contrast, in

*McPhaden* we held, absent mention of cost, that the ability to create a new driveway was enough

to make an easement not a necessity. 95 Wn. App. at 438-39.

Here, the trial court found that while it "may be more expensive," an alternative access

method "could be achieved." CP at 43. The evidence presented at trial indicated that an

alternate road to lot 4 would cost approximately $29,500 to construct. The court concluded that

the creation of another access point was not so infeasible as to warrant a presumption that the

parties intended to create an easement.[3] The undisputed facts here are much closer to those in

*McPhaden* than the extraordinarily burdensome situations in *Woodward* and *Haven*. Therefore,

this third element also supports the trial court's conclusion of law that there was no implied

easement.

For these reasons, we hold that the trial court applied the correct legal standard to the

facts it found[4] and that it did not err in concluding that there was no implied easement for ingress

and egress across lot 3.

---

[3] Gervais argues that the trial court did not apply the proper test because it concluded that another route was "feasible" instead of not reasonably necessary. Br. of Appellant at 29. While "feasible" can be interpreted as meaning "strictly possible," which would imply absolute rather than reasonable necessity, it can also mean "reasonable," which is sufficiently similar for the purpose of this analysis. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 831 (1969).

[4] In its final order, the trial court concluded that because an easement for ingress and egress across lot 3 was not reasonably necessary, Gervais "did not establish an easement by necessity." CP at 44. In its oral ruling, the trial court also discussed the factors relevant to determining whether an easement is implied by prior use but framed them as the factors relevant to "[a]n easement implied by necessity under the common law." RP (Apr. 10, 2015) at 11. However, the trial court clarified in the order that "[t]his action did not contain any claims by Gervais for easement by necessity pursuant to RCW 8.24 et seq.," CP at 44, and stated orally that

II. MOTION FOR RECONSIDERATION

Gervais moved for reconsideration, based in part on an estimate of $1,050,000 for the cost of constructing a new access roadway for lot 4 that did not cross lot 3. He argues that the trial court erred in denying his motion for reconsideration, contending that the court's legal conclusions misapplied or misstated the applicable law, particularly in light of new evidence related to the cost of constructing a new driveway for lot 4. Miederhoff counters that Gervais' motion for reconsideration is defective for two reasons: 1) the motion for reconsideration was not timely, and 2) the motion relies on new evidence that was not presented during trial. We hold that Gervais' motion was timely, but that the trial court did not err in denying it.

We generally review a denial of a motion for reconsideration for an abuse of discretion. *Fishburn v. Pierce County Planning & Land Servs. Dep't*, 161 Wn. App. 452, 472, 250 P.3d 146 (2011). "An abuse of discretion exists only if no reasonable person would have taken the view the trial court adopted, the trial court applied the wrong legal standard, or it relied on unsupported facts." *Id*. Where the trial court applies the wrong legal standard or improperly applies the correct legal standard, it abuses its discretion. *West v. Dept. of Licensing*, 182 Wn. App. 500, 516, 331 P.3d 72 (2014); *Fishburn*, 161 Wn. App. at 472.

---

I am not, for the record, ruling one way or the other on any question about condemnation of a way of necessity under RCW 8. 24 because that specifically was not pleaded and the plaintiff indicated they were not seeking to condemn a statutory private way of necessity under that section.

RP (Apr. 10, 2015) at 9. Given these statements, it is clear that the trial court applied the correct legal standard for an easement implied by prior use, despite its mischaracterization of that standard in the final order.

Under our rules of civil procedure, a motion for reconsideration must be filed "not later than 10 days after the entry of the judgment, order, or other decision." CR 59(b). If timely filed, a trial court may grant such a motion on the following grounds, among others:

> (4) [that there is n]ewly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial;
> . . . .
> (7) [t]hat there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
> (8) [or that an e]rror in law occur[ed] at the trial and [was] objected to at the time by the party making the application.

CR 59(a).

In evaluating the parties' arguments, we first assess the threshold question of timeliness. Concluding that Gervais' motion was timely, we then consider whether the trial court should have considered Gervais' new evidence and whether its legal conclusions were correct.

A.    Timeliness

Miederhoff argues that Gervais' motion for reconsideration was untimely under CR 59(b). We disagree.

As noted above, a party must file a motion for reconsideration within 10 days of the "entry of the judgment, order, or other decision." CR 59(b). The trial court has no discretion to enlarge this period for timely filing. *Metz v. Sarandos*, 91 Wn. App. 357, 360, 957 P.2d 795 (1998).

In general, a judgment is "the final determination of the rights of the parties in the action, . . . [which] includes any decree and order from which an appeal lies," CR 54(a)(1), and is deemed entered at the time it is filed with the court clerk. CR 58(b). The judgment in this case was issued on June 26, but was not filed until June 29, 2015. However, Gervais moved for

reconsideration of the court's ruling on June 26, before the judgment was filed. The trial court denied the motion without a hearing on July 1. In its order denying reconsideration, the trial court noted specifically that Gervais had timely filed the motion, apparently considering it as a motion to reconsider the judgment of June 26.

Miederhoff argues that because no judgment or order had been entered at the time Gervais moved for reconsideration, his motion was directed towards the court's oral ruling at the April 10, 2015 hearing. Miederhoff implicitly contends that the April ruling was a "decision" within the meaning of CR 59(b), subject to a motion for reconsideration. However, the term "decision" refers to "court actions similar in nature to judgments and orders," as opposed to "preliminary or tentative decisions subject to change before a final decision." *In re Marriage of Tahat*, 182 Wn. App. 655, 671-72, 334 P.3d 1131 (2014). Oral rulings of the trial court are not considered final decisions "unless formally incorporated into the findings, conclusions and judgment." *Id*. Here, the trial court did not formally incorporate its oral ruling into its final order or judgment. In fact, it expressly based its judgment solely on the findings and conclusions filed on June 29. Therefore, the trial court's oral ruling was not a decision subject to reconsideration under CR 59, and the trial court correctly considered Gervais' motion for reconsideration to be timely.[5]

---

[5] Nothing in the language of CR 59 indicates that motions for reconsideration are untimely because they are filed before the legal date of the action they ask the trial court to reconsider. CR 59(b) requires only that such a motion be filed "*not later than* 10 days after the entry of the judgment, order, or other decision." (Emphasis added.) Division Three of our court upheld a trial court's grant of a motion for reconsideration under similar circumstances in *Tahat*. 182 Wn. App. at 664-65, 676.

B.      Consideration of New Evidence

In his motion for reconsideration, Gervais asked the court to consider an engineering analysis prepared after the close of trial indicating that construction of a new driveway for lot 4 would cost more than $1 million. Miederhoff argues that it was improper to offer this new evidence after trial. We hold that the trial court correctly declined to reconsider its decision in light of this evidence.

Where new evidence is discovered after the close of trial that could lead the trial court to reconsider its judgment and which "could not with reasonable diligence have discovered and produced at the trial," a party may move for reconsideration. CR 59(a)(4). However, evidence that could have been discovered and produced, but was not, does not constitute such new evidence. *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 500, 183 P.3d 283 (2008). Here, Gervais commissioned the engineering report at issue after the close of trial, but did not argue that he could not have commissioned it earlier and produced it during trial. Accordingly, we hold that the trial court properly declined to consider the report as proper grounds for reconsideration.

C.      Merits on Reconsideration

Gervais argues that the trial court should have reconsidered its judgment because it misapplied or misconstrued the applicable legal standards. We disagree.

As discussed above, the trial court applied the correct legal tests and, given the facts found, correctly concluded that Miederhoff was a bona fide purchaser of lot 3 without inquiry notice of the express easement and that no driveway access easement was implied by prior use. In its order denying reconsideration, the trial court noted,

[Gervais'] motion for reconsideration reasserts a number of factual and legal points previously argued by the plaintiff. The court considered all of these assertions prior to making its rulings.

CP at 47.

Without the engineering report which we have held may not be considered on reconsideration, Gervais' motion for reconsideration did not call the trial court's legal reasoning or its decision into question. Therefore, Gervais did not present sufficient legal grounds for reconsideration, and the trial court did not abuse its discretion in denying that motion.

### III. ATTORNEY FEES

Miederhoff requests that we award him attorney fees on appeal. Because he fails to show any authority for that award, we deny his request.

We may award a party reasonable attorney fees or expenses on appeal if applicable law authorizes such an award and the party properly requests it. RAP 18.1(a). The only authority to which Miederhoff cites for the proposition that he is entitled to an award is RAP 18.12. That rule does not address attorney fees at all; instead, it provides that we may, in our discretion, set a proceeding for accelerated review. RAP 18.12. Miederhoff may have intended to cite RAP 18.1, but even if we construe his citation so liberally as to correct it, mere citation to RAP 18.1 is insufficient to constitute authority for an attorney fees award. *See In re Wash. Builders Ben. Tr.*, 173 Wn. App. 34, 86-87, 293 P.3d 1206 (2013). We deny Miederhoff's request for attorney fees on appeal.

No. 47852-8-II

CONCLUSION

We affirm the trial court's judgment and its order denying Gervais' motion for reconsideration.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

Johanson, J.

JOHANSON, J.

Lee, J.

LEE, J.

20